Albert A. Watrel, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Argued January 31, 1985, before Judges CRAIG and COLINS and Senior Judge BLATT, sitting as a panel of three.

*Betty F. Perry, Killian & Gephart,* for petitioner.

*Maura A. Johnston,* Deputy Attorney General, with her, *Marybeth S. Christiansen* and *Allen C. Warshaw,* Deputy Attorneys General, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, February 22, 1985 :

Albert A. Watrel appeals from a decision of the Board of Claims, which denied his breach-of-contract claim against the Pennsylvania Department of Education. We must determine whether DOE could, as part of a settlement agreement, validly bind the Pennsylvania State Employees' Retirement Board (SERB) to accept a contribution from Watrel, and whether SERB could legally accept such a contribution.

Watrel had been the president of Slippery Rock State College, and a member of the State Employees' Retirement System, from 1968 until the governor dismissed him June 11, 1976. After negotiations, Watrel and DOE executed a "Settlement Agreement and Mutual Release" in which Watrel relinquished all claims against the Commonwealth arising from his dismissal, and the Commonwealth, in addition to other provisions, agreed to provide Watrel a one-year sabbatical

and, if Watrel found employment elsewhere, "to accept contributions for retirement purposes through the state college system to permit [him] to become vested in the State Employees' Retirement System." The acting secretary of DOE signed the settlement agreement "for the Commonwealth of Pennsylvania."

The State Employees' Retirement Code requires an employee to participate for ten years in order to become "vested" and therefore entitled to an annuity. 71 Pa. C. S. §5309.

After securing employment in North Dakota, Watrel tendered payment to DOE for the purchase of his tenth year in the retirement system.[1] DOE forwarded the check to SERB, with the request that Watrel be permitted to purchase his final year of credit; SERB, however, rejected that request as "not being in conformity with law."

Under the Retirement Code, a former state employee cannot purchase pension credit for nonstate service performed after his separation from state employment.[2]

In an action before the Board of Claims, Watrel sought recovery, on a breach-of-contract theory, of the amount he would have received as an annuity if SERB had accepted his payment and permitted his pension to vest. The Board of Claims concluded that the settlement was a valid contract and that DOE had fulfilled its obligation when it received Watrel's check and forwarded it, with the request for acceptance, to SERB. The board also concluded that, if the DOE's

---

[1] Watrel's one-year sabbatical served as his ninth year of membership.

[2] See 71 Pa. C. S. §5304, which limits eligibility for creditable nonstate service to "active" members, and 71 Pa. C. S. §5102, which defines "active member" as "[a] State employee, or a member on leave without pay, for whom pickup contributions are being made to the fund."

duty included a "guarantee" that Watrel's retirement rights would vest, the doctrine of "intervening illegality" arising from SERB's decision, served to discharge that duty.

Watrel contends that not only DOE, but the entire Commonwealth, was party to the settlement agreement. Therefore, he asserts, SERB, as part of the Commonwealth, must honor that agreement and permit his purchase of his tenth year of service.

SERB is an "independent administrative board," 71 Pa. C. S. §5901, and, although part of the Commonwealth for purposes of sovereign immunity[3] and eleventh amendment protection,[4] it is separate and distinct from any administrative department of the executive.[5] Regardless of whether the secretary of DOE purported to act for the governor, or "for the Commonwealth," the secretary's signature could not obligate SERB to honor the settlement agreement.

Thus, we conclude that SERB was not a party to the settlement agreement and therefore not obligated to accept Watrel's contribution. A holding to the contrary would not only require SERB to follow the terms of an agreement when it had not participated in negotiation and settlement of the claim, but would also frustrate the board's execution of its fiduciary duty to manage the fund properly. 71 Pa. C. S. §5931.[6]

---

[3] *United Brokers Mortgage Company v. Fidelity Philadelphia Trust Co.*, 26 Pa. Commonwealth Ct. 260, 363 A.2d 817 (1976).

[4] *Flesch v. Eastern Pennsylvania Psychiatric Institute*, 434 F. Supp. 963, 977 (E.D. Pa. 1977).

[5] *See* section 201 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §61 and 71 Pa. C. S. §5309.

[6] Watrel also argues that the Commonwealth should be estopped from denying its obligation to accept his retirement contribution; however, because we have concluded that SERB was not a party to the agreement, the doctrine of estoppel does not properly apply to that board. Estoppel will not operate to prevent SERB from denying a promise it did not make.

To the extent that the secretary may have purported to represent "the Commonwealth", including SERB, we note the well-established principle that one who deals with a state official is "bound to know the limitations of that official's authority." *Rustrum Realty, Inc. v. Department of Property and Supplies,* 35 Pa. Commonwealth Ct. 62, 384 A.2d 1043 (1978).

Although we agree with Watrel's next contention, that the Board of Claims improperly applied the doctrine of intervening illegality,[7] we nevertheless conclude that the settlement agreement, insofar as it required any part of the Commonwealth to accept individual contributions to the retirement fund, was illegal and therefore not enforceable.

As a general rule, an agreement which violates a statutory provision, "or which cannot be effectively performed without violating [a] statute, is illegal, unenforceable, and void *ab initio.*" *Gramby v. Cobb,* 282 Pa. Superior Ct. 183, 188, 422 A.2d 889, 892 (1980).

Although the State Employees' Retirement Code does permit a member to receive credit for certain leaves of absence (71 Pa. C. S. §5302(b)) and for specified service in the military and in some public educational institutions (71 Pa. C. S. §5304), those provisions are dependent on service of some nature. Nothing in the Code permits a former employee merely to buy a period of eligibility.

Even if DOE possessed the power to bind SERB to the settlement agreement, any provision permitting outright purchase of service credits is contrary to statute and therefore unenforceable; clearly, DOE could not do for SERB what SERB could not have done itself.

---

[7] The doctrine of intervening illegality functions to discharge a contractual duty when a promise, lawful when made, becomes unlawful because of subsequent legislation or other governmental action. *See* A. Corbin, 6 Corbin on Contracts §1343 (1962).

6

Accordingly, we affirm.

**ORDER**

Now, February 22, 1985, the order of the Pennsylvania Board of Claims, No. 565, dated September 16, 1983, is affirmed.

Judge COLINS dissents.

Judge WILLIAMS, JR. did not participate in the decision in this case.