518 A.2d 1158

**Albert A. WATREL, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF EDUCATION, Appellee.**

Supreme Court of Pennsylvania.

Argued June 4, 1986.

Decided Dec. 11, 1986.

62

John D. Killian, Harrisburg, for appellant.

Susan J. Forney, Allen C. Warshaw, Deputy Attys. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Appellant, Dr. Albert A. Watrel, served as the president of Slippery Rock State College until his dismissal by Governor Shapp on June 11, 1976. When Dr. Watrel alleged that he had been illegally discharged, a Settlement Agreement and Mutual Release was negotiated between Dr. Watrel and the Commonwealth, Department of Education (hereafter "DOE"). Under the terms of the Agreement, Dr. Watrel relinquished all claims against DOE arising from his dismissal. In exchange, DOE agreed, inter alia, to grant Dr. Watrel one year sabbatical leave at half pay, waiving his duty to return to the state college system for one year of service following his sabbatical leave; pay liquidated damages in the amount of $19,968; and pay full fringe benefits through June 30, 1977. In addition, the parties agreed as follows:

> ALBERT A. WATREL agrees to make every effort to obtain employment elsewhere, and if such efforts are successful, the Commonwealth agrees to *accept contributions for retirement purposes through the state col-*

*lege system to permit ALBERT A. WATREL to become vested* in the State Employees Retirement System. In the event no other suitable employment is obtained by ALBERT A. WATREL, the Commonwealth agrees to permit appropriate employment to ALBERT A. WATREL within the state college system for a period of one year or such lesser period of time as is necessary for him to become vested in the State Employees Retirement System.

[Emphasis ours]. Prior to his dismissal, Dr. Watrel had contributed to the State Employees' Retirement System for eight years. When read in conjunction with the provision for sabbatical leave, it becomes obvious that the quoted provisions were designed to assure Dr. Watrel's contributions throughout the ten years required for vesting in the State Employees' Retirement System.

In accordance with his agreement to obtain employment elsewhere, Dr. Watrel secured employment as president at Dickinson State College in Dickinson, North Dakota. He duly tendered his tenth year contribution to DOE for forwarding to the State Employees' Retirement Board (hereafter "SERB"); however, SERB refused to accept the payment as not in accordance with the State Employees' Retirement Code, Act of March 1, 1974, P.L. 125, No. 31, as amended, 71 Pa.C.S.A. 5101 et seq. (Supp.1986) (hereafter "Code").[1] Thereafter, Dr. Watrel brought an action against DOE for breach of the Settlement Agreement and Mutual Release. He claimed damages in the amount of $105,333.41 —the value of his account if he had been vested with ten years credited service.

The Board of Claims denied recovery.[2] In doing so, the Board determined that there had in fact been no breach, reasoning that DOE had not expressly undertaken to guar-

1. There is no dispute that SERB's determination was correct.
2. Jurisdiction of the Board of Claims is set forth at 72 P.S. § 4651–4 (Supp.1986) which provides in pertinent part as follows:
   The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more.

antee Dr. Watrel's vesting in the State Employees' Retirement Fund and that all parties to the Agreement knew that DOE's power to act was limited to acceptance, transmittal and recommendation of Dr. Watrel's retirement contribution. The Board rejected Dr. Watrel's argument that the Commonwealth's agreement to accept contributions "to permit [him] to become vested in the State Employees Retirement System" operated as a guarantee on the grounds of intervening illegality. On appeal, Commonwealth Court determined that the Board had incorrectly applied the doctrine of intervening illegality. Nevertheless, Commonwealth Court, 88 Pa.Cmwlth. 1, 488 A.2d 378, affirmed the Board's decision, reasoning that the Agreement to permit vesting could not be effectively performed without violating a statute and was therefore " 'illegal, unenforceable, and void *ab initio,'* *Gramby v. Cobb,* 282 Pa.Super. 183, 188, 422 A.2d 889, 892 (1980)." Because there has been no breach by DOE and Dr. Watrel's plight is entirely of his own making, i.e., he bargained himself out of the retirement system, we affirm.[3]

As quoted, supra, the parties agreed that Dr. Watrel would make every effort to obtain employment elsewhere, and, in return, DOE would accept his tenth year contribution to permit his vesting in the State Employees' Retirement System. The parties' performance under this provision has generated the instant controversy because this provision is self-defeating. In accordance with this provision, Dr. Watrel sought and accepted a position of employment in North Dakota. The problem is that the Code only provides for extension of retirement credit to "active member[s]," and when he was employed in North Dakota, Dr. Watrel was not an "active member."

At the time Dr. Watrel tendered his tenth year contribution, "active members" included State employees[4] who

---

**3.** Jurisdiction is vested in this Court by virtue of 42 Pa.C.S.A. § 724.

**4.** "State employee" was defined as follows:
Any person holding a State office or position under the Commonwealth, employed by the State Government of the Commonwealth,

were contributing to the fund and members on leave without pay[5] for whom authorized contributions were made to

> in any capacity whatsoever, except an independent contractor or any person compensated on a fee basis, and shall include members of the General Assembly, and any officer or employee of the following:
>
> (1) the Department of Education, State-owned educational institutions, community colleges, and The Pennsylvania State University, except an employee paid wholly from Federal funds;
>
> (2) the Pennsylvania Turnpike Commission, the Delaware River Port Authority, the Port Authority Transit Corporation, the Delaware River Joint Toll Bridge Commission, the State Public School Building Authority, The General State Authority, the State Highway and Bridge Authority, the Delaware Valley Regional Planning Commission, the Interstate Commission of the Delaware River Basin, and the Susquehanna River Basin Commission any time subsequent to its creation, provided the commission or authority agrees to contribute and does contribute to the fund, from time to time, the moneys required to build up the reserves necessary for the payment of the annuities of such officers and employees without any liability on the part of the Commonwealth to make appropriations for such purposes, and provided in the case of employees of the Interstate Commission of the Delaware River Basin, that the employee shall have been a member of the system for at least ten years prior to January 1, 1963;
>
> (3) any separate independent public corporation created by statute, not including any municipal or quasi-municipal corporation, so long as he remains an officer or employee of such public corporation, and provided that such officer or employee of such public corporation was an employee of the Commonwealth immediately prior to his employment by such corporation, and further provided such public corporation shall agree to contribute and contributes to the fund, from time to time, the moneys required to build up the reserves necessary for the payment of the annuities of such officers and employees without any liability on the part of the Commonwealth to make appropriations for such purposes; or
>
> (4) any single county department of health or any joint county department of health created under the Local Health Administration Law, act of August 24, 1951 (P.L. 1304, No. 315).
>
> 71 Pa.C.S.A. § 5102.

5. Although "on leave without pay" is not specifically defined in the Code, the Code does provide as follows:

> (b) Creditable leaves of absence.—A member on leave without pay who is studying under a Federal grant approved by the head of his department or who is engaged up to a maximum of two years of temporary service with the United States Government, another state or a local government under the Intergovernmental Personnel Act of 1970, 5 U.S.C. §§ 1304, 3371–3376; 42 U.S.C. §§ 4701–4772, shall be eligible for credit for such service: Provided, That contributions are made in accordance with sections 5501 [relating to member contributions] and 5507 [relating to employer contributions], the

the fund, Act of March 1, 1974, P.L. 125, No. 31, since amended, 71 Pa.C.S.A. § 5102.[6] While he was employed in North Dakota, Dr. Watrel was neither. Thus, under the Code, he was not *entitled* to make contributions to the Fund, and the SERB, which is charged with administering the Fund according to the Code, 71 Pa.C.S.A. § 5901, properly rejected his tender.

■ As quoted supra, DOE agreed "to accept contributions ... to permit [Dr. Watrel] to become vested in the State Employees' Retirement System." The language is clear and unambiguous: DOE agreed to accept Dr. Watrel's contribution. When DOE forwarded the contribution to the SERB, it fully discharged its duty under this clause. As administration of the State Employees' Retirement Fund is solely the responsibility of the SERB, DOE was without power to effect the vesting of Dr. Watrel's pension. We will not presume that DOE agreed to perform an act which it did not have the statutory authority to perform. Any assumption by Dr. Watrel that DOE promised to do more than accept his contribution and forward it to SERB is unwarranted, as one who deals with a state official is bound to know the limitations of that official's authority. *Luzerne Twp. v. Fayette County*, 330 Pa. 247, 199 A. 327 (1938); *Rustrum Realty, Inc. v. Dept. of Property and Supplies*, 35 Pa.Cmwlth.Ct. 62, 384 A.2d 1043 (1978).

It could *seem* that Dr. Watrel got the short end of it, as it were, but the Agreement was the culmination of lengthy, sophisticated and counselled negotiations, and was freely entered into by both parties. Moreover, the provisions governing administration of the State Employees' Retirement Fund are fully set forth in the Code. Thus, Dr. Watrel must be charged with the knowledge that, when he ceased to be an "active member," he no longer was *entitled*

member returns from leave without pay to active State service for a period of at least one year, and he is not entitled to retirement benefits for such service under a retirement system administered by any other governmental agency.
71 Pa.C.S.A. § 5302(b).

**6.** This definition was changed slightly by amendment in 1982.

to retirement credit under the Code, and acceptance of his contribution was not assured. *Ignorantia juris quod quisque tenetur scire, neminem excusat.* As Dr. Watrel's predicament is entirely the result of an Agreement which he negotiated and freely entered into, he must accept the consequences.

The main thrust of Dr. Watrel's plea for relief is that the result in this case is inequitable. Careful consideration convinces us that his arguments are illusory.

First, Dr. Watrel argues by analogy to this Court's decision in *Sterling v. Commonwealth, Dept. of Environmental Resources,* 504 Pa. 7, 470 A.2d 101 (1983) that the Commonwealth has implied authority under the State Employees' Retirement Code to extend retirement credit to others than "active members." In *Sterling,* the opinion in support of affirmance authored by Mr. Justice Zappala and joined by then Chief Justice Roberts and Mr. Justice McDermott, recognized that DER had implicit authority to discipline employees in less severe fashion than the types of discipline enumerated in the Civil Service Act, 71 P.S. §§ 741.1 et seq. That case is clearly inapposite to the matter *sub judice.* The argument really amounts to an assertion that Commonwealth agencies may ignore applicable statutory provisions and simply do as they choose. This, of course, is error.

Next Dr. Watrel argues that if a court could order reinstatement with full benefits, including participation in an applicable pension plan, after a determination of illegal discharge, Commonwealth agencies should have the power to grant such relief as part of a settlement agreement. This argument overlooks two facts: (1) there has been no adjudication that, in fact, Dr. Watrel's discharge was illegal, and (2) the Department of Education has absolutely no authority to effect retirement credits in the State Employees' Retirement System.

Dr. Watrel then argues that public policy dictates that the Commonwealth should be able to exchange participation in the State Employees' Retirement System for an agreement not to litigate, and that since there is no statutory prohibi-

tion against granting retirement credit to others than "active members," his tenth year contribution should have been accepted by the Board. His argument seems to be that the Commonwealth's avoidance of litigation justifies relaxation of the statutory requirements contained in the Code. Carrying this argument to its logical extreme, any party who contracted with the Commonwealth could buy into the State Employees' Retirement System. This is obviously not the purpose of the State Employees' Retirement Code. As noted by Commonwealth Court, participation in the State Employees' Retirement System is predicated upon service to the Commonwealth.

It is interesting to note that, although Dr. Watrel did not sue, he bargained himself into an almost identical position. The Agreement provided that Dr. Watrel could seek reemployment in the state college system and that DOE would not stand in the way of such employment. Had Dr. Watrel taken a position in the state college system, he would have become an "active member" of the State Employees' Retirement System and been eligible to make his tenth year contribution to the Fund. The problem arose because Dr. Watrel also agreed to seek employment "elsewhere" and this provision seems to be the real cause of his failure to vest in the State Employees' Retirement Fund. While Dr. Watrel was employed outside the Commonwealth, he was not entitled to retirement credit under the Code.

Dr. Watrel frames the issue in the case as "whether the Commonwealth can agree, as part of a settlement, to grant retirement credit to an employe who is not reinstated to Commonwealth employment." This argument overlooks the plain fact that the State Employees' Retirement Board administers the State Employees' Retirement System, *and not DOE*, the agency with which Dr. Watrel contracted. DOE simply has no authority to grant retirement credit.

Dr. Watrel also argues the Commonwealth should be estopped from avoiding its promise. Dr. Watrel drafted the provision which disenfranchised him, and estoppel should not be available to a party who willingly agrees to terms that defeat the bargained for result. Dr. Watrel agreed to

seek employment elsewhere, and it is his employment outside the Commonwealth which resulted in his ineligibility to participate in the State Employees' Retirement System.

Dr. Watrel further argues that, if promissory estoppel is not applied against DOE in this case, Commonwealth officials will be free to "deceive and mislead those with whom they deal." Suffice it to say the record is devoid of any evidence of deception by DOE. In fact, the record shows that Dr. Watrel's own attorney submitted three or four drafts of the Agreement to DOE for approval during negotiations. Moreover, the Statement of Claim filed in the Board of Claims does not allege deception was perpetrated by DOE.

■ Finally, Dr. Watrel argues that because DOE sought approval of the Agreement from the Dept. of Justice and the Attorney General, the Agreement must perforce be enforceable. He argues, "For the courts to tell Appellant now that his reliance on the apparent authority of Commonwealth officials was misplaced would be shameful and unjust." The courts and not the Attorney General are the final arbiters of the legality of contracts. Moreover, Dr. Watrel seems to characterize the role of the Attorney General in reviewing the agreement as advocate for himself. Any expectation that the Attorney General would review the settlement agreement in terms of its favorability to Dr. Watrel would seem to be unjustified.

The order of Commonwealth Court is affirmed.

NIX, C.J., and LARSEN and HUTCHINSON, JJ., file a concurring opinion.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of Commonwealth Court is affirmed.

NIX, Chief Justice, concurring.

I am disturbed by the possible implication that the Commonwealth can avoid its promises by employing as a shield

a bureaucratic maze. One agency of the Commonwealth should not be permitted to deny any legitimate commitments by another agency of that same body.

However, here I am satisfied that the record is clear that there was no deception, misstatement of authority or even reliance by appellant. Under those circumstances, I am constrained to concur in the result reached by the majority.

LARSEN, Justice, concurring.

In view of the Findings of Fact made by the Board of Claims (Board), all of which are unchallenged by the appellant, and the conclusions of law based upon those findings of fact, I concur in affirming the order of the Commonwealth Court. The pertinent Findings of Fact made by the Board are as follows:

6. The settlement agreement and mutual release was negotiated by attorneys Killian [for appellant] and Donovan [for appellee].

14. Attorney Killian was a member of the Public School Employees' Retirement Board from 1971 until 1980 and was familiar with the operations of the state retirement system.

16. Attorney Donovan made it clear to Attorney Killian that she was unfamiliar with the operations of the State Employees' Retirement System, but that she would agree to any retirement plan that [appellant] could work out with the State Employees' Retirement Board.

17. Attorney Donovan deferred to Attorney Killian's experience with the state retirement systems (sic) and to his representations that the proposal was not unusual and had, in fact, been used in the past to effect the purchase of state employees' retirement benefits.

18. Attorney Donovan agreed to accept [Appellant's] retirement contribution and transmit it to the State Employees' Retirement Board with the recommendation that it be accepted.

19. Attorney Donovan never represented that the [Appellee] could guarantee that the state (sic) Employees' Retirement Board would permit [Appellant's] retirement benefits to vest.

20. Attorney Killian knew that the State Employees' Board alone had the authority to determine whether [Appellant] would be permitted to vest in the state employees' retirement system.

The relevant conclusions of law based upon the findings of fact are the following:

5. Pursuant to the retirement provisions of the Settlement Agreement and Mutual Release, the [Appellee's] duties were to accept, transmit, and recommend [Appellant's] retirement contribution to the State Employees' Retirement Board.

6. When the [Appellee] received [Appellant's] retirement contribution and forwarded it to the State Employees' Retirement Board with the request that it be accepted, the Appellee fulfilled all its duties under the retirement provisions of the Settlement Agreement and Mutual Release.

Further, the appellant argues that the appellee should be estopped from refusing to accept his payment and grant retirement credit for the tenth year as contemplated by the Settlement Agreement. Estoppel is an equitable remedy that arises when by one's acts, representations or silence, he induces another to believe that certain facts are true, and that other person reasonably relies on that belief to his prejudice. The gist of estoppel is a misrepresentation. *Murphy v. Burke*, 454 Pa. 391, 311 A.2d 904 (1973). Considering the relevant Findings of Fact set forth above, there is no evidence of misrepresentation on the part of the appellee and no evidence of reasonable reliance by the appellant. On the contrary, the evidence shows that appellant relied on his own judgment in reaching an agreement with the appellee. This is further amplified by the following additional Finding of Fact:

25. [Appellant's] check was transmitted by mail to the [Appellee] by Attorney Killian and was accompanied by

a letter to Attorney Donovan from Attorney Killian which read, in pertinent part:

'I hope and trust that you will be able to effect the purchase of the tenth year of credited service in accordance with the terms of the agreement.'

The tone of this comment, contained in the letter from appellant's attorney that accompanied appellant's check tendered to appellee to purchase a tenth year in the retirement system, indicates that the appellant was not convinced that the appellee would be able to persuade the State Employees' Retirement Board to "allow" such purchase. Under the circumstances as found by the Board, estoppel simply does not apply.

Additionally, appellant argues that equity and fairness demand that the appellant be granted the remedy he seeks because of the Retirement Board's failure to accept his tenth-year retirement contribution and vest his pension. The appellant's argument in this regard implies that he is left out in the cold without a vested pension. This impression, however, belies the facts in this case. The record shows that approximately twenty months after this claim was filed, the appellant was re-employed in the state college system and again became an "active member" in the retirement system. The Board of Claims found as facts that:

34. On May 21, 1979, [Appellant] became employed by East Stroudsburg State College and began contributing to the State Employees' Retirement System.

35. Based on Attorney Killian's recommendation, [Appellant] accepted employment at East Stroudsburg State College in order to become an active member of the state retirement system, and to purchase his tenth year of retirement credit.

36. In August of 1979, while employed at East Stroudsburg State College and while contributing to the retirement system, [Appellant] applied to purchase his non-state credit for the year of employment he then had at Dickinson State College, Dickinson, North Dakota.

37. On February 29, 1980, the Secretary of the State Employees' Retirement Board notified [Appellant], through counsel, that his application to purchase non-state credit was denied.

38. [Appellant] requested an administrative hearing on the State Employees' Retirement Board's decision. At that hearing, it was established that [Appellant's] application to purchase retirement credit for non-state service was denied because Plaintiff had already been credited for his year of non-state service in North Dakota.

Based upon the foregoing, I concur.

HUTCHINSON, Justice, concurring.

I concur in the result.

Considering the opportunities appellant has had and may still have to vest his pension in a proper manner, I must agree with Mr. Justice Larsen. Appellant has not demonstrated the kind of inequity which should induce us to relieve him from the effects of his reliance upon what appears to be his counsel's mistake in applying a complex statute to the situation in which appellant found himself when the settlement agreement was negotiated.