**Robert E. McCORMACK, Petitioner,**

v.

**STATE EMPLOYEES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2003.
Decided March 10, 2004.
As Amended March 11, 2004.

---

Elliot A. Strokoff, Harrisburg, for petitioner.

Paul M. Stahlnecker, Harrisburg, for respondent.

BEFORE: FRIEDMAN, J., COHN, J., and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Robert E. McCormack (McCormack) appeals from an order of the State Employees' Retirement Board (Retirement Board) that denied his request for additional retirement service credit. The issue on appeal is whether McCormack is entitled to additional service credit under Section 5302(a) of the State Employees' Retirement Code (Retirement Code), *as amended*, 71 Pa.C.S. § 5302(a), based on the lump sum payment made by his former employer to settle his wrongful termination action. We affirm.

The following relevant facts found by the hearing examiner and the Retirement Board are undisputed. On September 24, 1979, McCormack became an active member of the State Employees' Retirement System (SERS) as an employee of the Office of Attorney General (OAG). From August 1990 until the OAG terminated his employment on December 7, 1992, McCormack was a special agent assigned to the OAG's office in Meadville, Pennsylvania to investigate environmental crimes. After the termination, McCormack decided to retire effective December 8, 1992 and receive retirement benefits under options he elected. At the time of the termination, McCormack had 16.1354 years of credited state service.

McCormack thereafter filed an action under 42 U.S.C. § 1983 against the then Attorney General, Ernest D. Preate, individually and in his official capacity, and the OAG's officials (collectively, OAG) in the United States District Court for the Middle District of Pennsylvania. In the second amended complaint, McCormack alleged that the OAG terminated his employment in retaliation for his criticism of the Attorney General's misuse and abuse of the office and in an effort to prevent him from investigating individuals and businesses that had made monetary contributions to the Attorney General's campaign fund. McCormack sought reinstatement of his employment, backpay, compensatory and punitive damages, and attorney's fees.

Following discovery, McCormack and the OAG began settlement negotiations in January 1998 through their attorneys. On April 21, 1998, McCormack and the OAG entered into a "Settlement Agreement and General Release" (Settlement Agreement), which provided in relevant part:

> The Commonwealth of Pennsylvania, on behalf of the defendant ..., agrees to pay the plaintiff the total aggregate sum of $150,000 *as full and complete settlement of all of plaintiff's claims* in the lawsuits, including those for damages, declaratory and injunctive relief, attorney's fees, costs, and any other relief whether monetary or equitable to which the plaintiff may have been entitled or which he could have pursued in those cases. No further payments beyond that specified in this paragraph are to be made to plaintiff or his attorney.

Paragraph 4 of the Settlement Agreement (emphasis added).

On April 21, 1998, McCormack and the OAG also executed a Memorandum of Understanding, which stated that McCormack desired to be credited with payment for his annual leave as of December 31, 1992; he desired to allocate the $150,000 lump sum settlement payment as his salary and ben-

efits, as if earned from January 1, 1993 to May 25, 1996, pursuant to the attached schedule prepared by his attorney; he intended to apply for retirement benefits with an effective retirement date of May 25, 1996; and, the OAG neither supported nor opposed McCormack's desire to receive service credit in accordance with applicable law. The total amount allocated in the attached schedule was $156,026.66, exceeding the settlement amount of $150,000. As agreed in the Settlement Agreement, the OAG paid $150,000 by a check payable to McCormack and his attorney.

During the settlement negotiations, the SERS' director of membership service division, Louise Bell, reviewed several drafts of the Memorandum of Understanding prepared by the parties and had numerous conversations with the OAG. After receiving copies of the Settlement Agreement and the Memorandum of Understanding executed by the parties, Bell checked McCormack's personnel record which still showed December 7, 1992 as the date of the termination of his employment and no additional employer and employee contributions made to his retirement account since the termination. The SERS then contacted the OAG and inquired about McCormack's status. In June 1998, McCormack met with the SERS staff to discuss his retirement and medical benefits. McCormack thereafter received medical benefits for two years, but the OAG refused to pay employer contributions despite the SERS' demands. It was Bell's understanding that McCormack was willing to make employee contributions on the settlement amount.

In a letter dated March 13, 2001, McCormack's current attorney requested that the SERS recalculate McCormack's retirement benefits to reflect service credit from January 1, 1993 to May 25, 1996. The SERS denied the request, stating that additional service credit could not be granted without the OAG's (1) change of the termination date in McCormack's personnel record from December 7, 1992 to May 25, 1996; (2) payment of full backpay and benefits through May 25, 1996; and (3) promise to pay the SERS employer contributions. The SERS' Appeals Committee later denied McCormack's appeal, and McCormack appealed to the Retirement Board.[1] The OAG notified the Retirement Board that it would not intervene in McCormack's appeal.

In his opinion issued after a hearing, the hearing examiner recommended that McCormack's appeal be denied, concluding that he was not entitled to additional service credit from January 1, 1993 to May 25, 1996 because he was not a state employee during that period under the terms of the Settlement Agreement, and that the SERS lacked authority to unilaterally modify the terms of the Settlement Agreement or alter his personnel record. The Retirement Board subsequently denied McCormack's exceptions to the hearing examiner's recommendation and denied his appeal. McCormack's appeal to this Court followed.

McCormack contends that he is entitled to additional service credit from January 1, 1993 to May 25, 1996 because the lump sum settlement payment represents salaries that he would have earned during that period had he not been discharged, and that the OAG's refusal to pay employer contributions is not determina-

---

1. McCormack also filed a petition with the federal district court seeking construction of the Settlement Agreement. The court denied the petition due to McCormack's failure to seek relief within sixty days, as required by its previous order dismissing his wrongful termination action following the settlement.

tive of his entitlement to the requested additional service credit.[2]

The SERS is a creation of the legislature and, as such, its members have only those rights granted by the retirement benefit statute. Section 5955 of the Retirement Code, *as amended*, 71 Pa.C.S. § 5955; *Cosgrove v. State Employes' Retirement Board*, 665 A.2d 870 (Pa.Cmwlth. 1995). Section 5302(a) of the Retirement Code provides that "[i]n computing credited State service of a member for the determination of benefits, a full-time salaried *State employee* ... shall receive credit for service in each period for which contributions as required are made...." (Emphasis added.)

The Retirement Code defines the term "State employee" as "[a]ny person holding a State office or position under the Commonwealth, *employed* by the State Government of the Commonwealth, in any capacity whatsoever...." Section 5102, *as amended*, 71 Pa.C.S. § 5102 (emphasis added). Under Sections 5507(a) and 5906(c) of the Retirement Code, *as amended*, 71 Pa.C.S. §§ 5507(a) and 5906(c), the Commonwealth employers are required to make contributions to the retirement fund for their employees who are active members of the SERS and deduct employee contributions from each payroll. As the party seeking additional service credit from January 1, 1993 to May 25, 1996, therefore, McCormack had the burden of establishing that he was a state employee during that period and that required em-

ployer and employee contributions were paid to the SERS. *Wingert v. State Employes' Retirement Board*, 138 Pa.Cmwlth. 43, 589 A.2d 269 (1991).

It is undisputed that McCormack freely entered into the Settlement Agreement following three-month negotiations through his attorney, agreeing to accept $150,000 as full and complete settlement of all claims and relief sought in his wrongful termination action, including reinstatement, backpay, damages and attorney's fees. In agreeing to make the lump sum payment, the OAG did not agree to reinstate McCormack to his former position. Nor did the OAG agree to pay employer contributions to allow McCormack to obtain additional service credit for any period after the termination of his employment.[3] Further, the Memorandum of Understanding only sets forth McCormack's desire and intention to apply for additional service credit based on the lump sum settlement and the OAG statement that it neither supported nor opposed McCormack's desire to receive additional credit "in accordance with applicable law."

The facts in this matter are similar to those in *Watrel v. Department of Education*, 513 Pa. 61, 518 A.2d 1158 (1986), involving the settlement agreement between Watrel, the former state college president, and the Department of Education, in which Watrel agreed to relinquish all claims against the Department arising from the termination of his employ-

**2.** This Court's review of the Board's final adjudication is limited to determining whether the adjudication is supported by substantial evidence, whether it accords with law, or whether constitutional rights were violated. *Burris v. State Employes' Retirement Board*, 745 A.2d 704 (Pa.Cmwlth.2000). Further, as an agency charged with execution and application of the retirement statute, the Board is entitled to considerable deference in its construction of the Retirement Code and the reg-

ulations promulgated thereunder; therefore, the Board's construction may not be overturned unless it is clearly erroneous. *Id.*

**3.** Because Section 5302(a) of the Retirement Code permits only full-time state employees to receive service credit, the OAG's promise to make employer contributions without reinstating McCormack to his former position would have been illegal and unenforceable.

ment and make an effort to seek employment elsewhere. In return, the Department agreed, *inter alia*, to pay Watrel the lump sum amount as liquidated damages and continue to accept his employee contributions to allow him to become vested in the retirement system. Subsequently, Watrel secured employment in North Dakota and sent his tenth year employee contributions to the Department which in turn forwarded them to the SERS. After the SERS refused to accept his employee contributions, Watrel filed an action against the Department to recover the vested value of his retirement account.

The Supreme Court rejected Watrel's contention that the Retirement Board must permit him to purchase the tenth year of service, stating that the Retirement Board had the sole responsibility of administrating the state retirement fund and that the Department, therefore, lacked authority to effect the vesting of Watrel's retirement benefits. The Court further stated:

> It could *seem* that Dr. Watrel got the short end of it, as it were, but the Agreement was the culmination of lengthy, sophisticated and counselled negotiations, and was freely entered into by both parties. Moreover, the provisions governing administration of the State Employees' Retirement Fund are fully set forth in the Code. Thus, Dr. Watrel must be charged with the knowledge that, when he ceased to be an 'active member,' he no longer was *entitled* to retirement credit under the Code, and acceptance of his contributions was not assured.... As Dr. Watrels' predicament is entirely the result of an Agreement which he negotiated and freely entered into, he must accept the consequences.

*Id.* at 67–68, 518 A.2d at 1161 (emphasis in original.)[4]

■ As in *Watrel,* McCormack simply bargained himself out of the retirement system by agreeing to accept $150,000 to settle all of his claims asserted against the OAG without securing reinstatement of his employment. It is well established that settlement of disputed matters is favored by the law and must be sustained in the absences of fraud and mistake. *Sofronski v. Civil Service Commission, City of Philadelphia,* 695 A.2d 921 (Pa.Cmwlth.1997). Because McCormack's employment was not reinstated under the terms of the Settlement Agreement freely entered into by the parties, he could not be considered a state employee entitled to additional service credit during the period in question under Section 5302(a) of the Retirement Code.

Accordingly, the order of the Retirement Board is affirmed.

### ORDER

AND NOW, this 10th day of March, 2004, the order of the State Employees'

---

4. To support his contention that he is entitled to additional service credit, McCormack relies on *Abramski v. Public School Employees' Retirement System,* 99 Pa.Cmwlth. 69, 512 A.2d 106 (1986) and *Miller v. State Employes' Retirement System,* 156 Pa.Cmwlth. 83, 626 A.2d 679 (1993). *Abramski* involved the issue of proper allocation of the $2200 award in the action for breach of contract filed by the school teacher and football coach after he was discharged from the coach position. *Miller* also involved the issue of the allocation of the money awarded by the arbitrator in reinstating the state employee. This Court held in *Abramski* and *Miller* that the award should be allocated to the period in which it would have been earned, not to the period in which it was received. The issue in this matter is, however, McCormack's *entitlement* to retirement service credit during the period in question, not the allocation of an award as in *Abramski* and *Miller.* Therefore, McCormack's reliance on those cases is misplaced.

Retirement Board in the above-captioned matter is affirmed.