# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean R. Weaver,            :
        Petitioner      :
                       :   No. 124 C.D. 2015
     v.                 :   Argued: September 14, 2015
                       :
State Employees' Retirement Board,  :
        Respondent  :

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge


**OPINION**
**BY JUDGE SIMPSON**              **FILED: October 23, 2015**

This case presents an issue of first impression as to eligibility for credited service under the State Employees' Retirement Code, 71 Pa. C.S. §§5101-5957 (Retirement Code), during a lapse in salaried status when an employee was on *unpaid* disciplinary suspension, and during which no contributions were made.

Sean R. Weaver (Weaver) petitions for review from a decision of the State Employees' Retirement Board (Board) refusing to grant him credit for the three and-one-half years that elapsed between his termination and the conclusion of a grievance arbitration that converted the termination to an unpaid disciplinary suspension. The arbitrator reinstated Weaver to his position as a Liquor Control Officer for the Pennsylvania State Police (PSP). The award stated there would be no loss of service credit, but no back pay. The State Employees' Retirement System (SERS) refused to credit the period of his suspension, a decision ultimately upheld by the Board.

Weaver contends crediting services for an unpaid suspension does not violate the Retirement Code, provided contributions are paid. Thus, SERS should credit service here to give full effect to the arbitrator's award. Discerning no error below, we affirm.

## I. Background

Weaver became a member of SERS effective May 13, 1991, through his employment by PSP. The current dispute began when SERS repeatedly refused to adjust Weaver's service for the period between November 7, 1997, and July 9, 2001, to reflect credited service. During that three-and-one-half year period (Suspension), Weaver did not render service to the PSP, he did not receive a salary and, until the result of the grievance arbitration, his employment status was uncertain.

## A. Arbitrations

Weaver was terminated in November 1997 based on bad conduct[1] at a licensed facility while off duty. He filed a grievance that proceeded to arbitration. After a hearing, an arbitrator issued an award in 2001 sustaining the grievance in part, and denying it in part. His discharge was modified to a suspension "with no loss of seniority but with no back pay." Reproduced Record (R.R.) at 97a (Award). Upon request of counsel, the arbitrator clarified the Award to state: "with no loss of seniority or loss of service credit but with no back pay." Id. at 99a (emphasis added) (Supplemental Award) (collectively with Award, 2001 Award).

---

[1] Specifically, PSP terminated Weaver for committing criminal assault and disorderly conduct during an altercation at a licensed establishment located within his enforcement area. Reproduced Record at 104a.

PSP appealed the arbitrator's award to this Court, arguing it required credit for more than three years when Weaver was not salaried. PSP asserted requiring a credit when an employee performed no services violated 71 Pa. C.S. §5302 as to crediting services. PSP also alleged the 2001 Award contravened 71 Pa. C.S. §5955, which prohibits arbitration awards from altering pension rights.

In a 2002 memorandum opinion, PSP v. Fraternal Order of Police-LCB Lodges (LEO Sean Weaver) (Pa. Cmwlth., No. 2236 C.D. 2001, filed June 11, 2002) (PSP v. Weaver), (unreported), R.R. at 104a-12a, this Court affirmed the arbitrator's award, stating it did not violate the Retirement Code. SERS was not involved in the proceedings. PSP requested reargument, which this Court denied. PSP then petitioned for allowance of appeal to the Supreme Court, which was initially granted. Subsequently, the Supreme Court dismissed the appeal as improvidently granted.

PSP refused to award Weaver pension credit for his Suspension. Thus, Weaver filed another grievance. Relevant here, the arbitrator directed PSP to "formally petition [the Board] to make an adjustment to [Weaver's] pension service credit in accordance with" the 2001 Award. R.R. at 179a (2009 Award).

In November 2009, the Director of PSP's Bureau of Human Resources wrote to SERS requesting an adjustment to Weaver's service credit. When Weaver requested information from SERS as to his service credit in July 2010, SERS finally responded to PSP's 2009 letter. SERS determined that the arbitrator exceeded his authority in permitting a service credit in the Supplemental Award, and refused to honor it. PSP was thus unable to give full effect to the 2001 Award.

3

Through able counsel, Weaver appealed this determination to the SERS Appeals Committee, which denied it. Weaver appealed that decision to the Board.

**B. Board Proceeding**

Before the Board, the parties stipulated to certain facts. R.R. at 272a-75a. An administrative hearing was held before a hearing examiner, John Henderson, on June 18, 2013. Both Weaver and SERS appeared, represented by counsel. Then, on May 7, 2014, a different hearing examiner, Deb Wallet, issued a proposed adjudication.

The hearing examiner recommended that Weaver's appeal be denied, stating he was not entitled to receive retirement service credit for the period of time he was on unpaid disciplinary suspension. She reasoned the Retirement Code did not provide for a means of calculating service credit when an employee did not receive a salary or back pay from which contributions could be taken. Weaver then filed exceptions.

In response to Weaver's exceptions, the Board issued an opinion and order adopting the hearing examiner's proposed adjudication that denied Weaver's request for service credit. The Board wrote separately emphasizing that Weaver cited no "legal authority to support his position that SERS should unilaterally create and award retirement service credit when the Retirement Code provides no basis for granting such service credit." Bd. Op., 1/8/15, at 3. The Board adopted the hearing examiner's findings as supported by competent evidence, and it

4

adopted her conclusions as consistent with case law and provisions of the Retirement Code.

Weaver filed a petition for review of the Board's order to this Court.

## II. Discussion

On appeal,[2] Weaver argues the Board erred in refusing to grant a service credit for the period in which he was on an unpaid suspension because the granting of a credited service does not violate the Retirement Code. As this presents a matter of first impression, the Board did not have the benefit of prior experience in handling this situation where reinstatement did not include a provision for back pay. Without back pay, the Board claims, there is no means of obtaining the contributions and determining the credited service due.

## A. Statutory Framework

As the agency charged with execution and application of the Retirement Code, the Board is entitled to considerable deference in its construction of the statute and the regulations promulgated thereunder. Harrisburg Area Cmty. Coll. v. State Emps.' Ret. Sys., 821 A.2d 1255, 1258 (Pa. Cmwlth. 2003) (citing Burris v. State Emps.' Ret. Bd.), 745 A.2d 704 (Pa. Cmwlth. 2000)). Consequently, the Board's interpretation of the Retirement Code may not be overturned unless it is clearly erroneous. Id.

---

[2] Our review is limited to determining whether there was a violation of constitutional rights or an error of law, and whether any finding of fact was unsupported by substantial evidence. Pa. State Troopers Ass'n v. State Emps.' Ret. Bd., 677 A.2d 1329 (Pa. Cmwlth. 1996).

5

SERS is a creation of the legislature. Accordingly, its members have only those rights granted by the Retirement Code. McCormack v. State Emps.' Ret. Bd., 844 A.2d 619 (Pa. Cmwlth. 2004). Although SERS must liberally administer the retirement system in favor of its members, "a liberal administration of the retirement system does not permit the [B]oard to circumvent the express language of the [Retirement] Code ...." Marinucci v. State Emps.' Ret. Sys., 863 A.2d 43, 47 (Pa. Cmwlth. 2004) (quoting Dowler v. Pub. Sch. Emps.' Ret. Bd., 620 A.2d 639, 644 (Pa. Cmwlth. 1993)).

The Board has no authority to grant equitable relief contrary to the mandates of the Retirement Code. Rowan v. State Emps.' Ret. Bd., 685 A.2d 238 (Pa. Cmwlth. 1996). Moreover, "[t]he Retirement Code cannot be revised by the courts to achieve equitable results." Mager v. State Emps.' Ret. Bd., 849 A.2d 287, 292-93 (Pa. Cmwlth. 2004) (citing Jones v. State Emps.' Ret. Bd., 830 A.2d 607 (Pa. Cmwlth. 2003), appeal denied, 847 A.2d 1289 (Pa. 2004)).

The Retirement Code defines credited service as "state or nonstate service for which the required contributions have been made … or for which salary deductions or lump sum payments have been agreed upon in writing." 71 Pa. C.S. §5102 (emphasis added). The amount of "credited service" that a state employee is deemed to have determines his eligibility for vesting and the amount of benefits he receives at retirement age. Pa. Ass'n of State Mental Hosp. Physicians v. State Emps.' Ret. Bd., 483 A.2d 1003, 1004-05 (Pa. Cmwlth. 1984).

## B. Alleged Violations of Retirement Code

Weaver seeks credited service for the three-and-one-half year period classified as unpaid disciplinary suspension by the arbitrator to give effect to the credited service provision in the 2001 Award. As the party seeking additional service credit from the Board, Weaver has the burden of establishing he was a state employee during the Suspension. McCormack.

The material facts are undisputed. During Weaver's Suspension, he did not receive a salary. He did not perform any services for PSP or other approved types of nonstate service. Although he offered to make contributions after receiving the 2001 Award, Weaver did not make any contributions towards his retirement during this period. Also, PSP did not make any employer contributions during the Suspension. The 2001 Award stated there would be no loss in credited service, but with no back pay so as not to penalize PSP. PSP appealed the 2001 Award to this Court, which held the 2001 Award did not cause PSP to violate an express provision in the Retirement Code in PSP v. Weaver.

Ultimately, this appeal involves a matter of statutory construction. This Court must determine whether credited service can be awarded during the Suspension. To that end, we consider the legality of the 2001 Award, the claimed source of the right to credited service, and applicable provisions of the Retirement Code. We focus on two statutory provisions.

7

# 1. Section 5955 (Lawfulness of Award)

Weaver argues the arbitrator did not exceed his authority and contravene Section 5955 of the Retirement Code when he confirmed there would be no loss of credited service for the Suspension. Weaver also asserts the Board's adjudication is contrary to a decision of this Court involving the same employer and employee. As a consequence, the Board's adjudication should be overturned.

The Board responds that the arbitrator's vague award did not create a pension right. To the extent the arbitrator granted credited service for the period of Suspension, the Board asserts the 2001 Award is unlawful under Section 5955 of the Retirement Code.

Section 5955 of the Retirement Code states in pertinent part:

> [r]egardless of any other provision of law, pension rights of State employees shall be determined solely by this part or any amendment thereto, and <u>no</u> collective bargaining agreement nor any <u>arbitration award</u> between the Commonwealth and its employees or their collective bargaining representatives <u>shall be construed to change any of the provisions therein, to require the board to administer pension or retirement benefits not set forth in this part</u>, or otherwise require action by any other government body pertaining to pension or retirement benefits or rights of State employees.

71 Pa. C.S. §5955 (emphasis added).[3] For the following reasons, we agree with Weaver that the 2001 Award was lawful, but we disagree that the prior decision of this Court requires a reversal of the Board's decision currently on appeal.

---

[3] This Court upheld the constitutionality of the Act 23 amendment to Section 5955, enacted August 5, 1991, in <u>Pennsylvania State Troopers Association v. Commonwealth</u>, 603 A.2d 253 (Pa. Cmwlth. 1992).

8

An arbitrator "may not mandate … an illegal act to be carried out" or require a public employer to do that which the employer could not do voluntarily. Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt), 656 A.2d 83, 90 (Pa. 1995). "A mere error of law will not support a finding that the arbitrator exceeded [his] powers." City of Beaver Falls v. Beaver Falls Police Ass'n, 77 A.3d 75, 81 (Pa. Cmwlth. 2013) (quoting Commonwealth v. Pa. State Troopers Ass'n, 23 A.3d 966 (Pa. 2011) (plurality opinion)).

This Court previously held that Section 5955 should be construed to prohibit only collective bargaining for greater pension benefits than those provided in the Retirement Code. Pa. State Troopers Ass'n v. State Emps.' Ret. Bd., 677 A.2d 1329 (Pa. Cmwlth. 1996), appeal denied, 689 A.2d 237 (Pa. 1997). "Quite simply, the [Retirement Code] does not prohibit bargaining over pension benefits, nor does it prohibit pension benefits from being affected by arbitration awards. The Retirement Code prohibits only collective bargaining agreements from determining pension rights." Id. at 1331-32 (emphasis added). Stated differently, as long as an arbitration award does not grant rights that are unsupported by the Retirement Code, then the award is not unlawful.

In PSP v. Weaver, applying the essence test and limited in its review, this Court affirmed the 2001 Award. This Court stated the 2001 Award did not violate the Retirement Code and "the arbitrator acted within his authority." Slip Op. at 7; R.R. at 110a. We recognize PSP v. Weaver is not binding on the Board. Nonetheless, we consider that interpretation of the 2001 Award.

9

In response to PSP's challenge that the 2001 Award violated Section 5955, this Court noted "the Arbitrator's award did not violate any provision of the [Retirement] Code." Id. at 7 n.5; R.R. at 110a. Important to this Court's rationale was that the arbitrator did not award back pay due to the unduly extended period of Weaver's unresolved status. The Court added, "[c]ritically, the arbitrator also fashioned the award to provide Weaver with no loss of credited service so as not to penalize Weaver for the delay." Id. (emphasis added). We held the arbitrator did not exceed his authority, noting "the [Retirement Code] … [was] silent on the remedy." Id.

Weaver draws our attention to Pennsylvania Turnpike Commission v. Teamsters Local 250 (Pa. Cmwlth., No. 1011 C.D. 2014, filed October 24, 2014) (Cresci II), where this Court rejected an employer's challenge to an arbitration award under Section 5955. There, the claimant took unpaid leave to serve as a union officer as permitted by the collective bargaining agreement. The claimant served as an officer for over eight years. Then, he retired. The Turnpike Commission argued the eight years did not count toward his retirement accreditation. The arbitrator disagreed and awarded the medical benefits sought. Relevant here, the arbitrator also opined the Turnpike Commission should have made employer contributions to SERS while the claimant was on Union leave. Applying the essence test, this Court affirmed the arbitrator.

In determining that the arbitrator did not exceed his authority, this Court focused on the content of the award, not the opinion of the arbitrator. Because the arbitrator's statement regarding the Commission's obligations to make

10

contributions to SERS was *dicta* not contained in the award, this Court held the arbitrator did not violate Section 5955. The language in the award controlled. Id.

Here, in order to determine whether the 2001 Award violated the Retirement Code, we review its language. Cresci II. Prior to modification, the Award stated in full:

> The grievance is denied in part and sustained in part. The <u>discharge is modified to a suspension with no loss of seniority but with no back pay. The PSP is directed to offer reinstatement</u> to the grievant within thirty (30) days of the date of this Award. Such reinstatement shall be essentially in a one year last chance posture in which any further infraction could be basis for discharge. This stricture and the length of the suspension should impress upon the grievant the need to comport himself in a manner above and beyond reproach. The settlement negotiations as well as inherent delays in the grievance and arbitration procedure have unduly extended the period of time from the termination until the arbitration decision. Nevertheless, it would be inappropriate under all of the relevant circumstances to award back pay which would penalize the PSP and reward the grievant for delays out of their control.

R.R. at 97a (emphasis added). After counsel sought clarification as to its meaning, the arbitrator issued a Supplemental Award stating: "[t]he discharge is modified to a suspension with <u>no</u> loss of seniority or <u>loss of service credit</u>, but with no back pay." R.R. at 99a (emphasis added).

The arbitrator's use of the phrasing "no … loss of service credit" is significant. Based on its plain language, the 2001 Award did not confer pension rights on Weaver. The 2001 Award did no more than provide that PSP could not

11

penalize Weaver by causing the loss of any service credit due to him under the Retirement Code. Notably, the arbitrator did not attempt to instruct a non-party, such as SERS, as to its responsibilities. To comply with the 2001 Award, PSP needed to do all it could to help Weaver obtain service credit for the period of his Suspension.

The law is clear that an arbitrator cannot create or confer pension rights where such rights are inconsistent with the Retirement Code. Betancourt. In determining the validity of an award under Section 5955, courts consider whether an arbitrator ordered an illegal act. Where an arbitrator did not order an illegal act, the award does not violate Section 5955. Pa. State Troopers Ass'n, (plurality opinion). Applying this reasoning here, the 2001 Award does not violate Section 5955.

The 2001 Award was designed to ensure that PSP's improper termination did not result in Weaver losing any pension benefit to which he might be entitled under a three-year unpaid disciplinary suspension. As such, it did not create pension rights, and it does not form the basis for Weaver to claim credited service from SERS. Because the 2001 Award did not confer credited service rights, and only addressed the responsibilities of PSP toward Weaver, this Court determines the 2001 Award did not violate Section 5955 of the Retirement Code, as this Court previously held in PSP v. Weaver.

The 2001 Award is appropriately construed to place Weaver back in the position he would have been in had PSP suspended him without pay in the first instance. See, e.g., Miller v. State Emps.' Ret. Sys., 626 A.2d 679 (Pa. Cmwlth.

12

1993) (approving SERS allocation of arbitration award that placed grievant in same position as if employer had not violated his rights).  That is the status to which Weaver is entitled under the 2001 Award.  The question then becomes whether an employee on unpaid disciplinary suspension accrues service credit during that time, and if so, on what basis.

## 2. Section 5302 (Credited Service)

Weaver argues that crediting service to a reinstated employee does not violate Section 5302 of the Retirement Code.  He asserts the Board raises the same arguments that this Court rejected when PSP raised them in PSP v. Weaver.  Weaver frames the question before the Court in terms of contributions.  He contends if contributions are made in accordance with the Retirement Code on what Weaver would have earned during the Suspension, SERS could have legally issued the service credit here.  Its failure to do so was in error.

The Board responds that the Retirement Code does not include unpaid disciplinary suspensions as types of service or leave for which a member may receive credit.  It emphasizes credited service and compensation are tied together, so that the lack of back pay under the 2001 Award precludes Weaver from eligibility for credited service under the Retirement Code.  The Board maintains that crediting service for the Suspension would violate Section 5302 of the Retirement Code and applicable precedent.

In deciding whether an employee on unpaid disciplinary suspension is entitled to accrue service credit, we examine the statutory provisions and cases applying them.

13

### a. Service and Compensation

Section 5302, Credited State service, provides in pertinent part:

> (a) Computation of credited service.--In computing credited State service of a member for the determination of benefits, a full-time salaried State employee … <u>shall receive credit for service in each period for which contributions as required are made, or for which contributions otherwise required for such service were not made solely by reason of section 5502.1</u> … or any provision of this part relating to the limitations under IRC §401(a)(17) or 415(b), but in no case shall he receive more than one year's credit for any 12 consecutive months or 26 consecutive biweekly pay periods.

71 Pa. C.S. §5302(a) (emphasis added). Thus, this provision speaks in terms of "service" and of "contributions." On the "service" component, the Board underscored that for paid employees who are not full-time, members are only credited for the number of hours or days of services actually performed. <u>Id.</u>

For more context on the "service" component, Section 5302(b) provides for credit for members on leave without pay. Section 5302(b) allows credit in the absence of "service" as a State employee only in limited, discrete circumstances not applicable here. 71 Pa. C.S. §5302(b)(1). These two circumstances are when a member is studying under a federal grant, or is engaged up to two years with another government employer. <u>Id.</u> Further, service is then credited only when contributions are made. <u>Id.</u>

Further, this Court consistently holds that credited service and compensation are tied together. <u>Martsolf v. State Emps.' Ret. Bd.</u>, 44 A.3d 94 (Pa. Cmwlth. 2012); <u>Miller</u>; <u>Abramski v. Pub. Sch. Emps.' Ret. Sys.</u>, 512 A.2d 106 (Pa.

14

Cmwlth. 1986). In Abramski, we recognized under similar language in the School Retirement Code,[4] that back pay awarded as a result of a reinstatement should be credited to when it would have been paid if the employee had not been improperly dismissed. Thus, the compensation was credited to the proper year of service, and allocated accordingly.

In Miller, SERS allocated an arbitration award for a furloughed employee as if the compensation had been paid when due. The claimant was furloughed for three years. During his furlough, he grieved a number of alleged violations of his rehiring rights. The "arbitrator directed that compensation be paid to make up the difference between what [the claimant] earned during his furlough period and what he should have earned if his rehiring rights had not been violated." Id. at 680. There, the claimant challenged SERS' calculation of his final average salary. Miller retired based on estimates showing a certain retirement benefit estimate. However, then SERS informed him of a discrepancy because it erred in estimating his salary based on the award of almost $37,000 that inflated his last quarter. This Court determined his salary should have been awarded when due, not when actually paid. Therefore, SERS' calculation of his final average salary, based on allocating the arbitration award over the period it was due, was appropriate.

Significant here, relying on Abramski, the Miller Court reasoned that the provisions regarding "service credit and compensation are tied together and

_____

[4] 24 Pa. C.S. §§8101-8534. The retirement provisions in the Retirement Code are sufficiently similar to those in the Public School Employees' Retirement Code that cases involving PSERS (Public School Employees' Retirement System) may be relied upon when analyzing cases under SERS. See Miller v. State Emps.' Ret. Sys., 626 A.2d 679 (Pa. Cmwlth. 1993).

15

that <u>one cannot be awarded without the other</u>." <u>Id.</u> at 681 (emphasis added). The Board makes the same argument here.

There is no dispute that Weaver was not paid during his Suspension. The arbitrator was clear that Weaver was not entitled to any back pay during the Suspension. Without compensation, Weaver is not entitled to credited service. <u>Id.</u>

### b. Contributions

Despite acknowledgement that compensation was not paid, Weaver asserts the Retirement Code does not require compensation in order to credit service. Rather, it requires contributions. Pet'r's Br. at 22. Weaver contends after-the-fact contributions should be accepted by SERS to ensure he is credited service for the Suspension.

Weaver's argument has some merit in that SERS routinely accepts and processes contributions related to arbitration awards *that include a provision for back pay*. <u>See</u> <u>Martsolf</u> (explaining normal process for grievance awards where reinstatement is accompanied by back pay). But the ability to purchase credit after the fact is limited to circumstances when an employee receives compensation as a result of services performed, not mere lump sums. <u>Id.</u> That is one reason post-termination settlements are treated differently than arbitration awards that reinstate employees, retaining their employment status.

SERS has no obligation to accept contributions or offers to purchase service credit unless the party making the payment is entitled to credited service

16

under the Retirement Code. Watrel v. Dep't of Educ. (DOE), 518 A.2d 1158 (Pa. 1996). The Board relies on Watrel to support its argument that SERS may not accept contributions for credited service when the contributor lacks compensated status as an employee.

In Watrel, the claimant sued his employer, DOE, alleging improper discharge. Then he settled his claim. Relevant here, the settlement agreement specified that the Commonwealth agreed to accept contributions for retirement purposes to permit the claimant to become vested in SERS. When the claimant tendered contributions for forwarding to the Board, the Board refused to accept the payment as contrary to the Retirement Code. He then sued DOE for breach of contract. The Board of Claims found no breach because DOE did not represent in the settlement that it could guarantee the claimant's vesting in the retirement fund; that was beyond DOE's control.

Watrel has significance because it demonstrates SERS' absolute authority as to accepting contributions. Further, our Supreme Court underscored that participation in SERS is predicated upon service to the Commonwealth. The Court found dispositive the fact that the claimant did not perform work for the Commonwealth during the period he tendered contributions. That the equities favored a ruling in the claimant's favor did not sway our Supreme Court. It explained:

> [while] [i]t could *seem* that Dr. Watrel got the short end of it, as it were … the provisions governing administration of the State Employees' Retirement Fund are fully set forth in the [Retirement] Code. Thus, Dr. Watrel must be charged with the knowledge that, when he ceased to be an

17

'active member' he no longer was *entitled* to retirement credit under the [Retirement] Code.

Id. at 1161 (emphasis in original).

### c. Active Member

The determination of whether Weaver is an active member is helpful in resolving his claim to credited service. The Retirement Code defines "active member" as a "state employee, or a member on leave without pay for whom pickup contributions are being made …." 71 Pa. C.S. §5102. By contrast, an "inactive member" is "[a] member for whom no pickup contributions are being made …." Id. An employee must make contributions to be an active member. Leavey v. State Emps.' Ret. Sys., 471 A.2d 147 (Pa. Cmwlth. 1984). Here, there is no dispute that contributions were not made. To this extent, Weaver does not qualify as an "active member" or as a member on unpaid leave.

Weaver's eligibility for credited service as an active member also turns on whether he qualified as a "state employee" during the Suspension for which he seeks credit. A "state employee" is defined as "[a]ny person holding a … position under the Commonwealth, employed by the State Government of the Commonwealth, in any capacity whatsoever …." 71 Pa. C.S. §5102. A "state employee" is permitted to purchase state service credit while he is on the regular payroll and enrolled in SERS. Wright v. State Emps.' Ret. Bd., 580 A.2d 422 (Pa. Cmwlth. 1990). This Court addressed factors that determine state employee status in Wright.

There, the issue involved the employment status of an attorney who served as counsel to the Delaware River Port Authority (DRPA) on two different

18

compensation schedules. The <u>Wright</u> Court held the attorney was permitted to purchase state service credit corresponding to the period when he received regular paychecks and DRPA paid contributions to SERS. However, the employer changed the attorney's status when it began paying him on a fee-for-service basis. We reasoned the attorney ceased to be a "state employee" for purposes of SERS when his employer ceased making contributions on his behalf, and he no longer received a fixed salary as payment for services. The lack of contributions and the lack of salaried status were "of equal importance." <u>Id.</u> at 424.

Here, Weaver lacked both salaried status and contributions for the period at issue. Thus, considering the statutory provisions and cases applying them, Weaver does not qualify as a "state employee" for retirement purposes.

Nevertheless, Weaver contends these definitions do not account for this unique situation, in which he retained employed status as a result of his reinstatement, but was not awarded compensation in the form of back pay. Weaver suggests SERS has the authority to accept his contributions in a lump sum pursuant to the definition of "credited service" in Section 5102.[5]

This Court rejects Weaver's proffered interpretation. The language of Section 5102 defining "credited service" is clear: the allowance of agreements for payments of credited service relates to the predicate of "state service" or nonstate service, as it is "for" such service that payments may be accepted. Weaver did not

---

[5] "Credited service" as sought here is "state or nonstate service … for which salary deductions or lump sum payments have been agreed upon in writing." 71 Pa. C.S. §5102.

prove the Suspension qualified as either state service or creditable nonstate service.[6] State service is defined to include service "rendered as a State employee." 71 Pa. C.S. §5102. During the Suspension, Weaver did not render services as a state employee to meet the definition.

"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(b). It remains for the legislature, not the judiciary, to amend the statute to address Weaver's circumstances. Marinucci.

**d. Summary**

In sum, there is no provision for awarding credited service when an employee is on a type of unpaid leave that is not set forth in the Retirement Code. As members have only those benefits expressly provided in the Retirement Code, Weaver did not establish grounds for a service credit corresponding to the Suspension. McCormack. Although crediting service is not illegal *per se* under the Retirement Code, as this Court noted in PSP v. Weaver,[7] the statute is silent. In such cases, it is appropriate to defer to the Board in the statute's construction. Accordingly, we affirm the Board.

---

[6] Creditable nonstate service pertains to conversions to state service under other provisions of the Retirement Code. 71 Pa. C.S. §5102. As Weaver does not claim service based on the nonstate service provisions, there is no need to address them.

[7] In PSP v. Weaver, PSP only argued that Weaver was not entitled to service because he did not receive a salary. Thus, the other issues that are currently before this Court, regarding interpretation of the Retirement Code as a whole, were not raised.

20

### III. Conclusion

SERS has only those powers stated in the Retirement Code, which Weaver concedes does not expressly provide for credited service when no contributions are made. The Retirement Code makes no provision for crediting service without compensation. This Court's case law holds the two go hand in hand as the formula for calculating benefits is dependent upon each.

The crediting of service depended on Weaver's status under the Retirement Code. The Board did not abuse its discretion or commit an error of law in determining unpaid disciplinary suspension is not a type of leave for which credit may be purchased. As the Board's interpretation of the Retirement Code is entitled to deference, we affirm.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean R. Weaver,  :
            Petitioner  :
                     :  No. 124 C.D. 2015
            v.  :
                     :
State Employees' Retirement Board,  :
            Respondent  :

# **O R D E R**

**AND NOW**, this 23rd day of October, 2015, the order of the State Employees' Retirement Board is **AFFIRMED**.

 

_____
ROBERT SIMPSON, Judge