985 A.2d 671

Theodore KIRSCH Account of Theodore Kirsch, Jacob B. Steinberg Account of Jacob B. Steinberg, Thomas F. Doyle Account of Thomas F. Doyle, William G. Gormley Account of William G. Gormley, Appellants

v.

PUBLIC SCHOOL EMPLOYEES' RETIREMENT BOARD, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 20, 2008.

Decided Dec. 15, 2009.

440

Ralph J. Teti, Deborah R. Willig, Willig, Williams & Davidson, Sandra Schultz Newman, Robert W. Hayes, Cozen O'Connor, Philadelphia, for T. Kirsch, J.B. Steinberg, T.F. Doyle and W.G. Gormley.

Charles K. Serine, PA Public School Employees' Retirement System, Harrisburg, for Public School Employees' Retirement Board.

Thomas W. Corbett, Harrisburg, for Office of Attorney General of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER,
TODD, McCAFFERY, GREENSPAN, JJ.

*OPINION*

Justice EAKIN.

We granted allocatur on the following questions:

1.   Did the Commonwealth Court err by interpreting the
"Leave for service with a collective bargaining organization"
Section 8102 of the Retirement Code as preventing Petition-
ers from receiving full credit for the final average salaries
they earned while serving as officers in a collective bargain-
ing organization?

2.   Did the Commonwealth Court err by holding that Peti-
tioners' salaries artificially enhanced or inflated their retire-
ment benefits?

*Kirsch v. Commonwealth of Pennsylvania Public School Em-
ployees' Retirement Board*, 597 Pa. 222, 951 A.2d 257 (2008)
(Table).   For the following reasons, we affirm the Common-
wealth Court, finding the statute allows only the salary corre-
sponding with the position held at the school district during
the approved leave be credited to the retiree's retirement
earnings; inclusion of increased, union-provided compensation
artificially and impermissibly enhances or inflates retirement
benefits under the Retirement Code, 24 Pa.C.S. § 8101 *et seq.*

Appellants are former employees of the Philadelphia School
District;   each belonged to a local union which had a collective
bargaining agreement with the School District.[1]   Appellants
participated in the Public School Employees Pension Plan
made available to public school employees under the Code and
administered by the Public School Employees Retirement
System (PSERS).   *See* 24 Pa.C.S. §§ 8302, 8306.   Under the
Plan, participants earn pension credits for each year served in
the school system and may receive retirement payments from

1.   Appellants Kirsch and Steinberg were members of Philadelphia Fed-
     eration of Teachers, Local 3, American Federation of Teachers, AFL–
     CIO.   Appellants Doyle and Gormley were members of School Employ-
     ees Local 1201 National Conference of Fireman & Oilers Affiliated with
     SEIU AFL–CIO.

a joint pension funded by contributions by the school district to PSERS on their behalf. *Id.* Upon retirement, an employee's benefits are based on years of service and the average salary in the last years of employment. *Id.,* § 8102.

Appellants were granted an approved leave of absence to serve their respective unions in executive positions for the 1999 through 2004 school years. Pursuant to § 8102 of the Code, a school employee granted such leave is guaranteed the same compensation and benefits as if he had remained in active, full-time service with the employing school district. During a leave of absence, employees continue to receive compensation from the school district; the labor union then reimburses the school district for such salary, pension, retirement contributions, and other benefits due the employee on leave. Employees on approved leave continue to participate in PSERS through contributions made by the employing school district on their behalf.

While employee salary is generally based on a standard schedule and negotiated through a collective bargaining agreement between the School District and unions, the compensation paid to appellants while on leave was annually renegotiated between the School District and the unions. In other school districts, when employees take a similar leave of absence for union service, only the salary that would have been earned had the leave not occurred is reported for retirement purposes. Prior to the 2001–2002 school year, the School District reported to PSERS an amount consistent with the standard salaries each appellant would have earned had he remained in full-time employment with the School District.

However, during the 2000–2001 school year and thereafter, appellants' salaries reported by the School District for PSERS purposes were altered to reflect the significantly higher salary paid by the unions. Appellants were compensated at a rate 44% to 55% higher than the amount they would have received had they continued their regular employment with the School District.

In 2004, appellants chose not to return to their School District positions, and all appellants except Doyle filed retirement applications with PSERS. In determining appellants' final average salaries for annuity calculations, PSERS determined the increased salaries appellants earned through the union while on approved leave from the School District should not be included when calculating retirement benefits.[2] PSERS concluded § 8102 permitted only the salary level corresponding with the position held at the School District during the leave to be credited to appellants' retirement earnings. The decision to base appellants' retirement calculation solely on earnings commensurate with the scheduled school salary significantly affected appellants' retirement packages. The final average salaries differed by amounts ranging from $26,805 to $34,059, and retirement benefits differed 38 to 79%.

Appellants appealed PSERS's decision, asserting the retirement calculations should include additional credit for the salaries they received for their respective union services, rather than the amount they would have received had they not taken a leave of absence. The Public School Employees' Retirement Board, the governing body of PSERS and appellee in this action, rejected appellants' contentions and denied their request to have the higher compensation included for retirement purposes. *See* Board Order, 12/11/06.

The Commonwealth Court affirmed, finding the plain language of § 8102 supported the conclusion that "retirement credit is authorized only for the salary paid 'as if' 'or to the same degree in which' the member were in full-time service to the school district and not for any salary paid in excess of that amount." *Kirsch v. Public School Employees' Retirement Board*, 929 A.2d 663, 669 (Pa.Cmwlth.2007). The court fur-

---

2. Appellants contend PSERS is estopped from refusing to recognize the higher union salaries because it accepted the contributions based on the higher salaries without dispute or objection. However, 24 Pa.C.S. § 8534 obligates the Public School Employees' Retirement Board to correct any error in records and adjust payments whenever it discovers such an error. The Board learned of the error only upon appellants' retirement, and it corrected the error at that time.

444

ther found appellants were not school employees during their leave, but were instead employed by their respective unions. Thus, any salary received during that period was over and above any salary they would have received had they remained in their School District positions, and constituted an artificial inflation of compensation—which pursuant to § 8102 should not be included in their final average salary calculations. *Id.*, at 670–71.

The issues before us are purely those of statutory interpretation; accordingly, our scope of review is plenary. *Pennsylvania School Boards Association, Inc. v. Commonwealth of Pennsylvania Public School Employees' Retirement Board*, 580 Pa. 610, 863 A.2d 432, 436 (2004). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Chanceford Aviation Properties, L.L.P. v. Chanceford Township Board of Supervisors*, 592 Pa. 100, 923 A.2d 1099, 1104 (2007) (citation omitted). We have recently stated:

> To determine the meaning of a statute, a court must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. It is only when the words of the statute are not explicit on the point at issue that resort to statutory construction is appropriate. However, basic principles of statutory construction demand that when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit, and legislative history may be considered only when the words of a statute are not explicit.

*Commonwealth v. Fedorek*, 596 Pa. 475, 946 A.2d 93, 98–99 (2008) (citing *Commonwealth v. Dellisanti*, 583 Pa. 106, 876 A.2d 366, 369 (2005)).

■ We first consider whether the Commonwealth Court erred by interpreting the "[l]eave for service with a collective bargaining organization" definition of § 8102 as preventing appellants from receiving benefits based on the salaries they earned as union officers. Neither party disputes each appellant is entitled to credited service for the years of approved absence; the task before us is simply to determine what level of pay should be included for purposes of retirement benefits calculations under the Code.

Under § 8342 of the Code, that calculation is as follows: an eligible member is entitled to a "maximum single life annuity attributable to his credited service and equal to the sum of the ... single life annuities beginning at the effective date of retirement[.]" 24 Pa.C.S. § 8342. A "[s]tandard single life annuity" is "an annuity equal to 2% [or 2.5% depending on the class] of the final average salary, multiplied by the total number of years and fractional part of a year of credited service of a member." *Id.*, § 8102. "Final average salary" is based upon the highest average compensation [3] received as an active member during any three non-overlapping periods of 12 consecutive months. *Id.*

Section 8102 of the Code sets particular requirements regarding the compensation to be awarded to those taking approved leave and defines "[l]eave for service with a collective bargaining organization" as:

3. "Compensation" under the Code includes:
   Pickup contributions plus any remuneration received as a school employee excluding reimbursements for expenses incidental to employment and excluding any bonus, severance payments, any other remuneration or other emolument received by a school employee during his school service which is not based on the standard salary schedule under which he is rendering service, payments for unused sick leave or vacation leave, bonuses or other compensation for attending school seminars and conventions, payments under health and welfare plans based on hours of employment or any other payment or emolument which may be provided for in a collective bargaining agreement which may be determined by the Public School Employees' Retirement Board to be for the purpose of enhancing compensation as a factor in the determination of final average salary[.]
   24 Pa.C.S. § 8102.

> Paid leave granted to an active member by an employer for purposes of working full time for or serving full time as an officer of a Statewide employee organization or a local collective bargaining representative ... [p]rovided ... the employer shall fully compensate the member, including, but not limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, as if he were in full-time active service; and that the employee organization shall fully reimburse the employer for such salary, wages, pension and retirement contributions and benefits and other benefits and seniority.

*Id.*

Appellants contend both the Board and the Commonwealth Court erred as a matter of law by relying upon the wrong definition in § 8102 to determine what amounts should be included in their benefit calculations. Appellants argue the "[l]eave for service with a collective bargaining organization" definition controls only whether school district employees should receive credit for the *time* they were absent to work for their union. They assert the determination of what portion of the *salary* paid may be used to calculate benefits is controlled by the definition of "[a]verage final salary," which puts no limit on the amount of compensation.

In response, the Board claims it has consistently interpreted the definition of "[l]eave for service with a collective bargaining organization" as providing only the salary which would have been earned as a full-time School District employee. It contends the "[l]eave for service" definition contains a compensation implication, as the definition itself expressly provides a list of the types of compensation an employer must provide an employee on leave, and restricts that compensation to the amount it would be "as if he were in full-time active service." *Id.*

We find the Board's argument persuasive. While the definition of "[l]eave for service with a collective bargaining organization" controls whether an employee should receive credit for years on leave, the definition provides more than just an index

of requirements to be satisfied in order for an employee to receive retirement credit. It also provides a detailed list of what forms of compensation must be paid by both the employer and the collective bargaining organization. Considering the detail on this point provided by the General Assembly, it is clear the definition concerns not only whether an employee qualifies for leave, but also the amount of compensation and retirement credit to be received while serving outside the regular position on approved leave. The Commonwealth Court did not err by considering the "[l]eave for service with a collective bargaining organization" definition in determining the amount of approved leave compensation to be included in appellants' retirement calculations.

Appellants assert, however, even if the "[l]eave for service" definition controls, the Commonwealth Court failed to correctly interpret it. Appellants interpret the definition that school employees be paid "as if" they had remained in their School District position to mean they must be paid "in the same manner," not "in the same degree," as the Board concluded. Appellants note the Code should be liberally interpreted in favor of retirees, *see Pennsylvania School Board Association, Inc.,* at 437; they contend the phrase "as if" is commonly interpreted as "in the same manner" and thus, under a liberal interpretation in their favor, the higher, union-paid salary should be included in the final average salary computation.

The Board claims appellants' interpretation of "as if" is so amorphous as to be meaningless, and maintains the definition intends to address the substantive question of the amount of compensation to be paid an employee on leave, not the procedural question of the manner of payment. Accordingly, the Board asserts the "as if" language should be interpreted to mean the amount the employee would have received had he or she remained in his or her original School District position.

■ Again, we find the Board's interpretation persuasive. While the Code should be construed liberally in favor of the retiree, such construction cannot violate the plain, unambiguous language of the Code itself. *Id.,* at 441 (citations omitted).

Although the General Assembly did not expressly limit the salary to be paid to union officials on leaves of absence, the most common interpretation of the language used, "as if," denotes the idea of "to the same degree" and is not most commonly used to mean "in the same manner." An overall, contextual reading of the statute cannot support the interpretation that it merely refers to the method by which the employees would be compensated, rather than the amount they would receive. It would be illogical to suppose the General Assembly intended to dictate the ministerial matter of the manner in which employees were paid, but not deal with the obvious question of how much. This is especially true considering the definition deals with what constitutes payment, and details nothing regarding how—*i.e.,* the physical method or transactional procedure—that payment might be provided.

Code Regulations provide further support for our decision. They state proper contributions for credited service:

will be granted to an active member for an approved leave of absence as authorized under sections 8102 and 8302 of the Retirement Code ... *based on the salary the member would have received had the member been in regular full-time employment with the employer during the period of the leave.*

22 Pa.Code §§ 213.2, (b)(2) (emphasis added).

Our reading of the statute is further supported by its legislative background. Prior to 1992, retirement credit for leave of service with a collective bargaining organization was not permitted under the Code. In a 1983 official opinion, the Attorney General advised the Board "a person on leave from his or her employment as a public school employee to work full-time for a public school employee labor union is not entitled to active membership in the [PSERS]." Official Opinion of Attorney General's Office, 10/19/83. Responding to the Attorney General's opinion, the General Assembly amended the definition of "[a]pproved leave of absence" to include "service with a collective bargaining organization." *See* Act of

November 30, 1992, P.L. 737, No. 112; *see also* Act of April 29, 1994, P.L. 159, No. 29.

Considering the language of the amended definition, clearly the General Assembly meant to benefit the employee, who otherwise would have received no retirement benefits by choosing to work for a union; it also benefits the union by allowing it to avail itself of the service of its members. The purpose of the amendments was obviously to remove any impediments which precluded retirement service credit from being attributed to employees on leave of absence to serve the union.

However, nothing in the amended language suggests the General Assembly meant for union employees to receive greater retirement benefits than other union members who chose to stay in their school positions or are not given the opportunity to work for the union. Rather, the amendments suggest the General Assembly's intent was to equalize the playing field by providing retirement benefits for school employees regardless of whether they serve outside the school for a limited time.

Having considered the Code's plain language and applicable regulation in light of its legislative background and purpose, we hold the Commonwealth Court did not err in finding the Code precluded appellants from receiving credit for the higher salaries they were paid while serving as union executives.

We next consider whether the Commonwealth Court erred in holding the increased compensation the unions provided to appellants artificially inflated their retirement benefits, and therefore should not be included in the final average salary calculations pursuant to § 8102. "The restrictive definitions of compensation under the Retirement Code and regulations reflect the Legislature's intention to preserve the actuarial integrity of the retirement fund by 'exclud[ing] from the computation of employes' final average salary all payments which may artificially inflate compensation for the purpose of enhancing retirement benefits.' " *Christiana v. Public School*

*Employes' Retirement Board,* 543 Pa. 132, 669 A.2d 940, 944 (1996) (citations omitted); 24 Pa.C.S. § 8102.

Appellants contend the Commonwealth Court erred in finding any increase of salary received during the approved leave of absence constituted an artificial inflation of compensation. *See Kirsch,* at 671. They assert the Board may only refuse to consider the full amount of compensation paid to an employee from the final average salary calculation if it finds the employee was paid "for the purpose" of enhancing compensation. *See* 24 Pa.C.S. § 8102. Appellants point out the Board found no evidence to support a finding the higher salaries were established for retirement purposes, thus precluding it from determining the higher, union-approved salaries were set at an artificially high amount for the purpose of enhancing the employees' retirement benefits.

The Board counters that the union officers' salaries were substantially above the standard salary schedule for the School District positions from which leave was granted, and therefore are not within the definition of "[c]ompensation" under the Code. The Board cites *Christiana,* where this Court recognized the Boards responsibility to guarantee the actuarial soundness of the retirement fund. To further this responsibility, "the Board has determined that it is statutorily required to exclude nonregular remuneration, *nonstandard salary,* fringe benefits, bonuses, and severance payments from inclusion as compensation under the Retirement Code. The Board has developed the concepts of 'standard salary' and 'regular remuneration' as part of its understanding of compensation." *Christiana,* at 945 (emphasis added).

We agree the salaries not based on the standard salary schedule constitute an artificial inflation of compensation for purposes of retirement benefits calculations. Under the Code, "[c]ompensation" entails:

Pickup contributions plus any remuneration received as a school employee excluding ... remuneration ... received by a school employee during his school service *which is not based on the standard salary schedule* under which he is

rendering service ... or any other payment ... which may be provided for in a collective bargaining agreement which may be determined ... to be for the purpose of enhancing compensation as a factor in the determination of final average salary.

24 Pa.C.S. § 8102 (emphasis added). Under this definition, remuneration received by an employee that is not based on the standard salary schedule is excluded, as are payments provided to enhance compensation for retirement purposes. The definition is in the disjunctive, such that finding of the latter is not essential, as appellants would have us accept. Appellants admit their salaries with the union were not based on the School District's standard salary schedule. Thus, it is irrelevant the remuneration would not have been provided by the union for the purpose of enhancing compensation. Accordingly, the union-approved salary, which exceeded the School District standard salary, may appropriately be excluded.[4]

Therefore, we find § 8102 of the Code does not authorize increased salaries earned through a collective bargaining organization while on approved leave from a school district to be included as credit for retirement calculation purposes; under the statute, only the salary corresponding with the position held at the school district during the approved leave may be credited to retirement earnings. We further find, the inclusion of the higher salary in appellants' benefits calculations constituted an artificial inflation of retirement benefits, which is precluded under the Code.

4.  Appellants also argue the Commonwealth Court erred in determining they were not school employees during their approved leave. The Commonwealth Court found appellants were union employees during their approved leave; therefore, the salary they received through the unions was not received as a school employee and constituted artificial inflation of compensation. See Kirsch, at 670–71. However, as noted above, because the leave salary exceeded the standard salary schedule, the increased salaries constituted artificial inflation of compensation under § 8102. As our holding lies independent of appellants' employment status, we need not address whether they were school employees during their leave of absence in order to determine whether the enhanced salaries constituted an artificial inflation of compensation. Accordingly, further inquiry into appellants' argument is unnecessary.

452

Based on the foregoing, the order of the Commonwealth Court is affirmed.

Jurisdiction relinquished.

Chief Justice CASTILLE and Justices SAYLOR, BAER, TODD, McCAFFERY and GREENSPAN join the opinion.