IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| OFFICE OF ADMINISTRATION AND PENNSYLVANIA STATE POLICE, | : | No. 77 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court at No. 925 CD |
| | : | 2015 dated December 29, 2015 |
| | : | Affirming the Decision of the State |
| v. | : | Retirement Board issued on May 6, |
| | : | 2015 at Nos. 2012-12, 2012-13, and |
| | : | 2012-24 |
| STATE EMPLOYEES' RETIREMENT | : | |
| BOARD,  BRUCE A. EDWARDS, | : | ARGUED:  March 8, 2017 |
| JOSEPH R. KOVEL, JOSEPH E. SARKIS, | : | |
| PA STATE TROOPERS ASSOCIATION, | : | |
| | : | |
| Appellees | : | |

## OPINION

**JUSTICE DONOHUE**                         **DECIDED:  March 16, 2018**

Section 5302(b)(2) of the State Employees' Retirement Code, 71 Pa C.S. §§ 5101-5956 ("Retirement Code"), requires a public employer to permit an employee to take leave to serve as a fulltime officer of a statewide employee organization (a union). 71 Pa.C.S. § 5302(b)(2).  While on leave, the public employer "shall fully compensate the member, including, but not limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, as if he were in full-time active service," and the union must reimburse the employer for all amounts so paid.  *Id.*  In the present case, we must determine whether compensation paid at higher amounts to employees on leave must be considered when computing the employee's retirement

benefit under the Retirement Code. To this end, we must decide whether our holding in *Kirsch v. Pub. Sch. Emp.' Ret. Bd.*, 985 A.2d 671 (Pa. 2009), in which we decided the same issue under the companion Public School Employees Retirement Code, 24 Pa.C.S. §§ 8101–9102 ("PSERC"), also applies here. We conclude that the relevant statutory provisions of the Retirement Code and PSERC differ significantly and thus compel a contrary result. Accordingly, we affirm the order of the Commonwealth Court.

## I. Factual and Procedural History

The facts and procedure underlying this matter, while lengthy, are necessary for resolution of this appeal. Bruce Edwards, Joseph Sarkis and Joseph Kovel (collectively, "Claimants") are Pennsylvania State Police ("PSP") officers and members of the Pennsylvania State Troopers Association ("PSTA"). The Commonwealth of Pennsylvania ("Commonwealth") and PSTA were parties to a collective bargaining agreement, which expired on June 30, 2008.[1] During negotiations for a successor agreement, the Commonwealth and PSTA reached an impasse regarding, inter alia, union officer leave. An Act 111 interest arbitration panel was convened, and it issued an award on December 24, 2008 ("December Award") that included, in relevant part, the

---

[1] The right of firefighters and police officers to collectively bargain for purposes of wages, hours, and working conditions is secured through the Police and Firemen Collective Bargaining Act, commonly known as Act 111. *See* 43 P.S. §§ 217.1 - 217.10. The dispute resolution process utilized when an Act 111 public employer and bargaining agent are at impasse and unable to agree to a new contract is known as "interest arbitration." *See* 43 P.S. § 217.4. This may be contrasted with the process by which parties to a collective bargaining agreement resolve disputes that arise under an existing contract, which is known as "grievance arbitration." *Michael Lutz Lodge No. 5. v. City of Philadelphia*, 129 A.3d 1221, 1222-23 (Pa. 2015). While the collective bargaining agreement at issue here was between the Commonwealth and PSTA, the Commonwealth acted, ostensibly, on behalf of PSP.

following leave provision providing for compensation for those officers while on leave serving their union:

Upon written request by PSTA, Union officers shall be released from duty.

> Union officers released from duty pursuant to State law shall be paid by the Commonwealth at the amount designated by PSTA Board of Directors, not to exceed the rate of the highest ranking member of the bargaining unit with appropriate longevity. Any amount paid by the Commonwealth, including the cost of all benefits, shall be reimbursed by the PSTA to the Commonwealth, in accordance with law.

*Pa. State Police v. State Emp.' Ret. Bd.*, 131 A.3d 136, 137-38 (Pa. Commw. 2015) ("*PSP v. SERB*") (quoting December Award). The Office of Administration ("OA")[2] and PSP (collectively, "Appellants") appealed the December Award to the Commonwealth Court, arguing that the arbitration award violated the creditable leave provision found in section 5302(b)(2) of the Retirement Code, 71 Pa.C.S. § 5302(b)(2), as, in their view, that section obligated the Commonwealth to pay

---

[2] The OA is the administrator of the Commonwealth's collective bargaining agreements, and interest arbitration awards, with the unions representing the Commonwealth's employees, including the PSTA. Appellants' Brief at 5.

a trooper on union leave only the compensation that the trooper would receive "as if he were in full-time active service."[3],[4] *Id.*

The Commonwealth Court agreed with Appellants, basing its reasoning on this Court's holding and analysis in *Kirsch v. Public School Employees' Retirement Board*, 985 A.2d 671 (Pa. 2009), and concluded that the union officer leave provision of the December Award violated section 5302(b)(2)'s creditable leave provision because it required the Commonwealth to pay officers on union leave more than they would

---

[3]  Section 5302(b)(2) provides, in relevant part:

> (b) Creditable leaves of absence.–
>
> * * *
>
> (2) An active member on paid leave granted by an employer for purposes of serving as an elected full-time officer for a Statewide employee organization which is a collective bargaining representative under the act of June 24, 1968 (P.L. 237, No 111), referred to as the Policemen and Firemen Collective Bargaining Act . . . : Provided, That for elected full-time officers such leave shall not be for more than three consecutive terms of the same office . . . ; **that the employer shall fully compensate the member, including, but not limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, as if he were in full-time active service;** and that the Statewide employee organization shall fully reimburse the employer for all expenses and costs of such paid leave.

71 Pa.C.S. § 5302(b)(2) (emphasis added).  Section 5302 was amended by Act 2015-93 (H.B. 1332), § 10, approved December 28, 2015, effective that same date, and subsequently by Act 2017-5 (S.B. 1), § 306, approved June 12, 2017, effective that same date, but these amendments do not alter the relevant sections of the statute for purposes of our decision today.

[4] For purposes of our Opinion, the rate of pay paid to union officers on fulltime leave is referred to as the "union rate of pay."  Further, the difference between Claimants' union rate of pay and Claimants' rate of pay in fulltime active service, the first generally being greater than the second, is herein referred to as the "union differential."

receive if they were not on leave. *Commonwealth v. Pa. State Troopers Ass'n*, 979 A.2d 442 (Pa. Commw. 2009) ("*PSTA I*").[5]

By way of background, in *Kirsch*, recently retired public school employees on union officer leave sought to utilize the compensation that they had received as union officers – a compensation greater than they would have received had they remained in their positions in the school district – for purposes of retirement computation. In this regard, the school district had traditionally reported to the Public School Employees' Retirement System ("PSERS") only the compensation the union-leave employees would have earned had they remained in their pre-union-leave positions with the school district. However, after the school district and the union entered into a collective bargaining agreement that required the school district to report to PSERS the actual, higher wages received by union-leave employees, those employees, upon retirement, sought to have the higher salaries they had received while on leave, determined on an annual *ad hoc* basis, included in their retirement benefit calculations. PSERS opposed the retired employees' request, arguing the retirees were not entitled to inflated pension benefits under the definition of "leave for service with a collective bargaining organization," found in section 8102 of PSERC.

Our Court considered the plain language of the definition, the context of the statute, and its legislative background and purpose, and concluded that the "as if he

---

[5] Notably, Judge Pellegrini dissented on this issue, concluding that the majority's reliance on *Kirsch* was inapt because the court was not being asked to review a Public State Employees' Retirement Board decision as to what pension credit a police officer would receive when that officer retires. Rather, in Judge Pellegrini's view, only when the officers retire and the Public State Employees' Retirement Board makes a decision, which could then be appealed, would *Kirsch* be applicable. *PSTA I*, 979 A.2d at 448 (Pellegrini, J., concurring and dissenting).

were in full-time active service" compensation language in the definition precluded the school employees from receiving retirement credit for the higher salaries they were paid while serving as union officials. *Kirsch*, 985 A.2d at 677. We further reasoned that, because the salaries received by the school employees while on union leave were determined on an ad hoc annual basis, and not pursuant to the standard salary schedule, they were excluded from the definition of "compensation" under PSERC. Therefore, our Court held that the union differential was not retirement-covered compensation, and that only the salary corresponding with the position held at the school district during the approved leave should be credited to the retiree's retirement earnings. *Id*. at 678.

In the instant case, on appeal from *PSTA I*, a plurality of our Court found reliance on *Kirsch* to be premature, concluding section 5302(b)(2) of the Retirement Code "does not purport to address the pre-retirement concern of the level or amount of employee salaries," and that, therefore, the December Award did not violate the Retirement Code. *Commonwealth v. Pa. State Troopers Ass'n*, 23 A.3d 966, 973 (Pa. 2011) (plurality) ("*PSTA II*").[6] Of relevance here, in distinguishing *Kirsch* and finding that the December Award was within the authority of the Act 111 arbitration panel and, as such, was beyond the scope of our review, *id*. at 977, Justice McCaffery, writing for the plurality, observed that "[t]he only issues in *Kirsch* [] were whether the employees should receive credit for [the union differentials] for purposes of computing their retirement pension

---

[6] Justice McCaffery authored the Opinion Announcing the Judgment of the Court, joined by Justices Baer and Todd. Justice Orie Melvin concurred in the result. Chief Justice Castille filed a dissenting opinion in which Justice Eakin joined, and Justice Saylor filed a dissenting opinion in which Chief Justice Castille joined.

benefits," *id.* at 974, and that "the instant case does not involve the calculation of pensions but the essential authority of an Act 111 interest arbitration panel to set salaries," *id.* at 975. Noting that *Kirsch* arose from an appeal of a decision of the Public School Employees' Retirement Board ("PSERB") interpreting its mandate under PSERC, and not from an appeal of an interest arbitration award under Act 111 or the Public Employee Relations Act, Justice McCaffery observed that *Kirsch* "dealt with post-employment retirement matters, not the salary requirements of present employees, which are at issue in the instant case." *Id.* at 976.

Then-Justice, now-Chief Justice Saylor, joined by Chief Justice Castille, authored a dissenting opinion, offering that the General Assembly's intent in compensating an employee on leave for union service "as if he were in full-time active service" was to "preserve the ongoing accrual of retirement benefits for employees." *Id.* at 979 (Saylor, J., dissenting). Doing otherwise, according to the dissent, would "create an untenable administrative burden on the Commonwealth and the retirement system." *Id.* Chief Justice Castille also authored a dissenting opinion, joined by Justice Saylor, in which he would have found the Court's prior decision in *Kirsch* — in which the Court considered identical language and excluded union-approved salary from retirement calculation to the extent it exceeded the school district's standard salary — to be controlling.

Following the issuance of our decision in *PSTA II*, Appellants complied with the December Award and paid Claimants at the union rate of pay. All pay for members of the bargaining unit of troopers is determined through collective bargaining. The collective bargaining agreement between the Commonwealth and PSTA's, during relevant times, based salary on rank (Trooper through Major) and years of service.

More specifically, Claimant Edwards, who was on full-time union officer leave from January 2007 through January 2012, during which he served as President of the PSTA, was paid at the rate commensurate with the rank of a Major, although he held the rank of a Sergeant while at PSP; Claimant Sarkis, who was on full-time officer leave from October 2009 to January 2012, during which time he served as Vice President of the PSTA, was paid as a Captain, although he held the rank of a Corporal while at PSP; and beginning in January 2012, when he assumed the Presidency of the PSTA, Claimant Kovel was paid as a Sergeant, although he previously held the rank of Corporal. Although the Commonwealth paid Claimants at the union rate of pay, it did not report the union differential as retirement-covered compensation or deduct pension contributions based on the higher amounts. Instead, the Commonwealth reported only Claimants' rate of pay as if they were in fulltime active service as retirement-covered compensation and deducted pension contributions accordingly.

In July 2011, the PSTA asked the interest arbitration panel to reconvene. PTSA sought a declaration from the panel that the union differentials were retirement-covered compensation and that pension contributions should be withheld accordingly. The panel issued an Implementation Order on September 26, 2011 which, in relevant part, directed that the Commonwealth:

> Deduct and continue to deduct from . . . all . . . wages paid while on union leave all appropriate contributions, including mandatory employee pension contributions from all sums paid to the affected members pursuant to [the union officer leave provision], effective retroactive to pay date January 7, 2011. . . .

*PSP v. SERB*, 131 A.3d at 139 (citing the Implementation Order). After exhausting all appeals of the Implementation Order, Appellants, in separate actions, requested a

decision from the State Employees' Retirement System ("SERS") regarding how Appellants should report Claimants' union officer leave; how much compensation should be reported under the Retirement Code; and what contributions should be made to SERS for Claimants Edwards, Sarkis and Kovel. SERS ultimately determined that the retirement computation should be based on the compensation Claimants would have received if they had not been on union leave:

> [T]he compensation that the affected officers would have received in their positions as a State Police officer had they not been on union officer leave should be reported to SERS. Employer and member contributions should be made to SERS only on the compensation that the affected officers would have received as State Police officers had they not been on union officer leave.

*Id.*, (citing SERS decision). The PSTA and Claimants appealed SERS's determinations to the State Employees' Retirement Board ("Board"). Thereafter, Appellants filed a petition to intervene, which the Board granted. A hearing officer was appointed and the appeals were consolidated.

On January 24, 2014, the hearing officer issued a decision concluding the union differentials were not retirement-covered compensation under the Retirement Code. Finding *Kirsch* controlling, the hearing officer reasoned that only the salaries Claimants would have earned "as if" they were in fulltime active service were retirement-covered compensation. The hearing officer rejected Claimants' argument that the different definitions of "compensation" contained in the Retirement Code and PSERC, *compare* 71 Pa.C.S. § 5102, *with* 24 Pa.C.S. § 8102, rendered *Kirsch* distinguishable as in *PSTA II*. The hearing officer further examined the legislative history of section 5203(b)(2), offering that PSP employees on fulltime union leave were able to receive retirement

credit only after section 5203(b)(2) was amended in 2006. More specifically, the hearing officer observed that, when the 2006 amendment was originally proposed in the Senate, it read, in relevant part, that the member on leave would be paid "by an employer for purposes of serving as an appointed or elected full-time official or officer **at his union rate of compensation**." However, the Hearing Officer stressed that the final version of the 2006 amendment did not include the phrase "at his union rate of compensation," suggesting the union differential would not be the proper amount for computing retirement benefits. *PSP v. SERB*, 131 A.3d at 140 (citing Hearing Officer's Opinion and Recommendation). Further, the hearing officer concluded that, to allow the union differentials paid to Claimants to be considered retirement-covered compensation would essentially allow a collective bargaining agreement or arbitration award to dictate the pension rights of state employees, in disregard of section 5955 of the Retirement Code which precludes, inter alia, collective bargaining agreements or arbitration awards from altering pension rights. 71 Pa.C.S. § 5955.[7] Claimants filed exceptions to the hearing officer's determination.

---

[7] Section 5955 of the Retirement Code provides:

> Regardless of any other provision of law, pension rights of State employees shall be determined solely by this part or any amendment thereto, and no collective bargaining agreement nor any arbitration award between the Commonwealth and its employees or their collective bargaining representatives shall be construed to change any of the provisions herein, to require the board to administer pension or retirement benefits not set forth in this part, or otherwise require action by any other government body pertaining to pension or retirement benefits or rights of State employees.

(continued…)

The Board adopted the hearing officer's findings of fact, but rejected her conclusions of law, analysis, and recommendation, determining that she erred in finding *Kirsch* controlling, and that the differences between the definition of "compensation" found in the Retirement Code[8] and PSERC[9] prevented the Board from simply adopting

_____

(…continued)
71 Pa.C.S. § 5955. Section 5955 was amended by Act 2015-93 (H.B. 1332), § 10, approved December 28, 2015, effective that same date, and subsequently by Act 2017-5 (S.B. 1), § 306, approved June 12, 2017, effective that same date, but these amendments do not alter the relevant sections of the statute for purposes of our decision today.

[8] "Compensation" is defined in the Retirement Code, in relevant part, as:

> [p]ickup contributions plus remuneration actually received as a State employee excluding refunds for expenses, contingency and accountable expense allowances; excluding any severance payments or payments for unused vacation or sick leave; and excluding payments for military leave.

71 Pa.C.S. § 5102. Section 5102 was amended by Act 2015-93 (H.B. 1332), § 10, approved December 28, 2015, effective that same date, and subsequently by Act 2017-5 (S.B. 1), § 306, approved June 12, 2017, effective that same date, but these amendments do not alter the relevant sections of the statute for purposes of our decision today.

[9] "Compensation" is defined in PSERC, in relevant part, as:

> [p]ickup contributions plus any remuneration received as a school employee excluding reimbursements for expenses incidental to employment and excluding any bonus, severance payments, any other remuneration or other emolument received by a school employee during his school service which is not based on the standard salary schedule under which he is rendering service, payments for unused sick leave or vacation leave, bonuses or other compensation for attending school seminars and conventions, payments under health and welfare plans based on hours of employment or any other payment or emolument which may be provided for in a collective bargaining agreement which may be determined by the Public School Employees'

(continued…)

the Hearing Officer's application of *Kirsch* to resolve Claimants' appeals. Concluding, as we noted in *PSTA II*, that the definition of compensation is broader in the Retirement Code than in PSERC, and that, in contrast to *Kirsch*, the Retirement Code definition was broad enough to encompass the union differentials received by Claimants, the Board further noted that Claimants' union differentials were a product "derived from the normal salary schedule" found in the collective bargaining agreement, unlike the union pay rate in *Kirsch*, which was negotiated annually on an *ad hoc* basis. Therefore, the Board reasoned that, because the union differential "does not fall into any of the categories of non-compensation payments found in section 5102's definition, it must therefore be 'compensation' for purposes of [the Retirement Code] and thus includible as part of . . . Claimants' retirement-covered compensation." *PSP v. SERB*, 131 A.3d at 141 (quoting Board Decision at 37). Accordingly, the Board overruled the hearing officer's determination and granted Claimants' request that SERS treat the union differentials as retirement-covered compensation.

On appeal, the Commonwealth Court affirmed. Appellants argued that the Board erred as a matter of law in concluding the union differentials were retirement-covered compensation because, in their view, the Board's interpretation was contrary to *Kirsch*, and, further, that the December Award created or modified retirement benefits in

(…continued)

> Retirement Board to be for the purpose of enhancing compensation as a factor in the determination of final average salary, and excluding payments for military leave.

24 Pa.C.S. § 8102. Section 8102 was amended by Act 2015-93 (H.B. 1332), § 10, approved December 28, 2015, effective that same date, and subsequently by Act 2017-5 (S.B. 1), § 306, approved June 12, 2017, effective that same date, but these amendments do not alter the relevant sections of the statute for purposes of our decision today.

violation of section 5955 of the Retirement Code. The Board countered that its conclusion was correct because it believed *Kirsch* was not controlling, maintaining that the December Award did not alter the benefits formula or eligibility criteria established by the Retirement Code, and, therefore, did not usurp its authority in violation of section 5955. *Id.* at 141.

The Commonwealth Court acknowledged that the central issue in the case was the proper interpretation of the relevant provisions of the Retirement Code: the definition of "compensation" in section 5102 and the creditable leave provision in section 5302(b)(2). *Id.* at 142. Noting that, as SERS members, Claimants' retirement benefits are calculated using a formula that takes into account both the amount of credited service and the amount of compensation paid during such credited service, the court observed that, although it is questionable whether union officer leave would be considered state service without section 5302(b)(2), that section explicitly provides that such time shall be credited to a state employee "as if he were in full-time active service." *Id.* Thus, under section 5302(b)(2), the court reasoned the salary received by those on fulltime union leave is considered the salary received by a state employee. *Id.* Under section 5102 of the Retirement Code, "remuneration actually received as a State employee" is considered retirement-covered compensation unless it falls into one of the enumerated exclusions: refunds for expenses, contingency and accountable expense allowances; severance payments or payments for unused vacation or sick leave; and payments for military leave. *Id.* Therefore, the court concluded, because it was undisputed that the salaries received while on fulltime union leave did not fall into any of

the exclusions listed in the definition of compensation, the remuneration received by PSP officers on fulltime union leave was retirement-covered compensation. *Id.*

With regard to Appellants' contention that the Board's interpretation was contrary to our holding in *Kirsch*, the Commonwealth Court embraced the Board's reasoning that, because the definition of compensation in PSERC differed from the definition of compensation in the Retirement Code, the Board was not compelled to apply the holding in *Kirsch* to the instant case

> In both *Kirsch* and the present case, employees on full-time union leave could only receive retirement credit "as if [they] were in full-time active service." The difference between *Kirsch* and the instant case is that in *Kirsch*, the school employees, even if not on union leave, would not have been entitled to have any portion of their salary outside of the standard salary schedule credited as retirement-covered compensation, while Claimants here, whether on full-time union leave or not, are entitled to have all remuneration credited as retirement-covered compensation (except for exclusions not applicable here). The Board's interpretation and application, therefore, were not contrary to law or clearly erroneous.

*Id.* at 144.

Finally, as to Appellants' claim that the Board erred in concluding the union differentials were retirement-covered compensation because, in doing so, it allowed the December Award to create or modify Claimants' retirement benefits in violation of section 5955, the Commonwealth Court disagreed, citing *Weaver v. State Emp' Ret. Bd.*, 129 A.3d 585 (Pa. Commw. 2015), wherein the court held that section 5955 should be construed to prohibit only bargaining for greater pension benefits than that allowed in the Retirement Code, and that the Code does not prohibit bargaining with respect to pension benefits or prohibit pension benefits from being impacted by an arbitration

award. *Id.* at 591. Rather, the court in *Weaver* found that section 5955 of the Retirement Code prohibits only a collective bargaining agreement from determining pension rights. *Id.* In the present case, noting that the Board did not allow the award to determine Claimants' pension benefits, but, instead, based its determination on the requirements set forth in sections 5102 and 5302(b)(2) of the Retirement Code, the Commonwealth Court concluded that the arbitration award *affected* the pension benefits, as permitted by the Retirement Code, but did not **increase** them in violation of section 5955. *PSP v. SERB*, 131 A.3d at 145. Accordingly, the court affirmed the Board's order.

## II. Arguments

Appellants' primary focus, and first contention, is that our decision in *Kirsch* is controlling. Appellants point out that, in that matter, school district employees were on a leave of absence to work for their union, and in doing so, were paid a higher rate of salary by the unions than they would have been paid had they continued in their school employee positions. According to Appellants, our Court in *Kirsch* reasoned that, pursuant to the language of PSERC, the individuals were not entitled to benefits based upon their enhanced salaries. Appellants maintain that, in reaching this conclusion, we expressly relied upon language in PSERC that is identical to that found in the Retirement Code: that retirement is authorized for compensation paid "as if [the employee] were in full-time active service." *Kirsch*, 985 A.2d at 675. Building on this argument, Appellants offer that our Court reasoned that, while the General Assembly did not limit the salary to be paid to union officials while on leave, the most common interpretation of the language used, "'as if,' denotes the idea of 'to the same degree,'

and is not most commonly used to mean 'in the same manner,'" as one of the parties in *Kirsch* argued. *Id.* at 676. Further, Appellants emphasize that the facts in the two matters are virtually identical, with union officers on leave being compensated at a higher rate of pay than they would have earned working for the school district.

Appellants also reject the Commonwealth Court's reliance on the Retirement Code's definition of "compensation" in reaching its conclusion. According to Appellants, the concept of union differentials is not specifically included in, or excluded from, the definition of compensation. Moreover, Appellants claim that union differentials could not have been contemplated by the General Assembly as within the definition of compensation, as the pertinent section of the definition of "compensation" was already in place when section 5302(b)(2) was amended to grant employees leave to serve their union. Thus, according to Appellants, but for section 5302(b)(2), none of the compensation earned by union officers while on leave would have been considered retirement-covered compensation.

Appellants further assert that the legislative history underlying the enactment of the Retirement Code establishes that the General Assembly did not intend for employees on leave to serve their union to receive greater retirement credit than those who continue to work for their employer, as both PSERC and the Retirement Code were amended at the same time to allow employees to earn retirement credit while on leave to work for their union, and, according to Appellants, to restrict the retirement credit to that which would have been earned had they continued to work for their public employer. Appellants posit that this effort to preserve the status quo for employees on leave to work for their union does not mean an enhanced retirement benefit to union

officers on leave, but merely the ability to earn the same retirement benefit the employee would have earned had the employee not taken a leave of absence for union business. Moreover, Appellants point to a failed 2006 attempt to amend the Retirement Code to specifically allow for union salaries to be counted as retirement-covered compensation.

Appellants add that the Commonwealth Court misconstrued our decision in *PSTA II*, emphasizing that our Court stated our decision was "not about how the award will one day be interpreted by the agency charged with administering the [Retirement Code]. . . . This is a case falling under Act 111." *PSTA II*, 23 A.3d at 972. Thus, Appellants stress that *PSTA II* involved whether an interest arbitration panel had the authority to award a higher rate of pay to union officers who were on leave to work for the union, and not whether union differentials should be considered retirement-covered compensation. Finally, Appellants highlight section 5955, contending that the provision prohibits arbitration awards from being used to create or modify retirement rights.

The Board counters that the Retirement Code permits union officers on leave to receive retirement credit and benefits when they serve as union officers. The Board points to section 5302 of the Retirement Code which, in relevant part, grants retirement service credit for active members on paid leave to serve as an officer for a union, and "that the employer shall fully compensate the member, including, but not limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, as if he were in full-time active service." 71 Pa.C.S. § 5302(b)(2). The Board asserts that *Kirsch* is distinguishable. Specifically, the Board offers that the union officers' salaries in that case were negotiated annually on an ad hoc basis, and were not

based upon the salary scales contained in the collective bargaining agreement, as in the matter sub judice. While the school district in *Kirsch* reported the full amount of the payment to the officers' annual payment to PSERS, it did not fully recognize the amounts reported as the union officers' compensation for retirement purposes. The Board explains that our Court looked to the definition of "compensation" under PSERC, which is defined more narrowly than under the Retirement Code, and found that the ad hoc personally-negotiated salaries of the union officers were excluded from their pensionable salary as they were not based upon the standard salary schedule for the school district as required by PSERC. Thus, according to the Board, *Kirsch* did not create a blanket rule that union salaries may not be used as compensation for pension purposes, but, rather, that only compensation not based on the standard salary schedule was excluded from pension calculations. From this, the Board argues that not only must the provision authorizing pension benefits be considered, but other terms used to calculate the benefits payable in a particular case must be taken into account.

Further, the Board rejects Appellants' assertion that *Kirsch*'s holding should apply equally in this case, because PSERC and the Retirement Code employ different definitions of "compensation," stressing the broader definition under the Retirement Code. The Board continues that, under the Retirement Code, as long as the payment is "remuneration actually received as a State employee" while the employee is on union leave and not a prohibited reimbursement, it is "compensation" and includible in the calculation of the member's pension benefit. As the wages paid to the Claimants are derived from the PSP's pay schedule through the collective bargaining process, and not

an ad hoc stipend personally negotiated by the parties, the Board claims such wages are includable in their pension calculation.

The Board then addresses section 5955's prohibition against collective bargaining or arbitration awards changing retirement benefits. The Board submits that the Commonwealth Court properly concluded that the Retirement Code does not prohibit arbitration awards from impacting pension benefits, but, rather, only prohibits agreements from determining pension rights. The Board notes that the terms of the arbitration award in this case do not require it to provide benefits outside of the formulas and classes established by statute. According to the Board, the award does nothing more than establish compensation for a specific class of employees, which is within the authority of an arbitration panel, and a collective bargaining agreement or arbitration award granting such an increase in pay which creates a rise in the employee's pension does not violate section 5955. The Board emphasizes that this is especially true here, where the payments were based upon the employer's standard pay schedule. Thus, the Board contends the award neither violates section 5955 nor oversteps the panel's authority.

Claimants and PSTA, as intervenors, largely echo the Board's arguments, highlighting that the distinction between the statutory language in PSERC and in the Retirement Code renders *Kirsch* distinguishable. Because the bargained-for union differential was "compensation" under the Retirement Code, for which the Commonwealth must fully compensate Claimants, Claimants and PSTA maintain that such amounts are properly used to calculate pension benefits under the Retirement Code.

## III. Analysis

This Court granted discretionary review to address the following question:

> Did [the] Commonwealth Court erroneously affirm the decision of the State Employees' Retirement Board that union stipends, paid to union officers to work exclusively for the union, are retirement-covered compensation, when that decision was clearly contrary to the mandates of the State Employees' Retirement Code and inconsistent with decisions of this Honorable Court?

*Office of Admin. v. SERB*, 163 A.3d 395 (Pa. 2016) (per curiam). This question may be separated into two distinct issues. First, whether the Commonwealth Court misinterpreted the retirement compensation provisions of the Retirement Code in a manner inconsistent with this Court's interpretation in *Kirsch* of the corresponding provisions of PSERC. Second, whether the December Award violated section 5955 of the Retirement Code by permitting the pension rights of certain state employees to be modified by an arbitration award. We will address these two issues in turn. Because resolution of both issues require that we engage in statutory interpretation, they present pure questions of law, for which our standard of review is de novo and our scope of review is plenary. *See, e.g., Scungio Borst & Assocs. v. 410 Shurs Lane Developers, LLC*, 146 A.3d 232, 238 (Pa. 2016).

Pursuant to the Statutory Construction Act, "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). It is well settled that the best indication of the General Assembly's intent may be found in a statute's plain language. *See id.*, § 1921(b). Thus, "when the language of a statute is plain and unambiguous and conveys a clear and definite meaning," we must give the statute this plain and obvious meaning. *Mohamed*

*v. Commonwealth Dep't of Transp.*, 40 A.3d 1186, 1194 (Pa. 2012). In ascertaining legislative intent, courts may apply certain presumptions, including that General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S. § 1922(1); *Commonwealth v. Shiffler*, 879 A.2d 185, 189–90 (Pa. 2005).

## A. Retirement-Covered Compensation

The Commonwealth Court ruled that given the differing statutory provisions in PSERC and the Retirement Code, the Board was not required to apply our holding in *Kirsch* in this case. Appellants contend that in *Kirsch*, this Court focused on PSERC's definition of "leave for service with a collective bargaining organization," including in particular its language requiring that the employer fully compensate the employee on union leave "as if he were in full-time active service." Appellants argue that in *Kirsch* we ruled that this language precludes the inclusion of union differentials in pension benefits calculations, and that, as such, the Board was compelled to similarly interpret the Retirement Code, which contains the same language. The Board, Claimants and PSTA posit instead that *Kirsch* did not create a blanket rule applicable under both PSERC and the Retirement Code, and that the differing definitions of the term "compensation" in the two statutory schemes properly accounts for the contrasting results in the two cases.

We agree with the Board, Claimants and PSTA that *Kirsch* did not create any such blanket rule. In *Kirsch*, this Court began with the above-referenced language in PSERC that the employer fully compensate the employee on union leave "as if he were in full-time active service." *Kirsch*, 985 A.2d at 675 (citing 24 Pa.C.S. § 8102). We interpreted this provision to "remove any impediments which precluded retirement

service credit from being attributed to employees on leave of absence to serve the union." *Id.* at 677. We recognized that, on the one hand, this language did not expressly limit the salary that an employee on union leave could receive, but, on the other, it also did not suggest any legislative intent that employees on union leave should receive greater retirement benefits than those received by employees not on leave. *Id.* at 676-77. Instead, we concluded that the General Assembly's intent was to "equalize the playing field by providing retirement benefits for school employees regardless of whether they serve outside the school for a limited time." *Id.* at 677.

With respect to whether union differentials could be used in the computation of retirement benefits, in *Kirsch* we turned to PSERC's definition of "compensation," which specifically **excludes** remuneration "which is not based on the standard salary schedule under which he is rendering service... ." *Id.* Based upon this definition, we concluded that any remuneration in excess of that which is based on the standard salary schedule for school employees does not constitute "compensation," and thus must be excluded from the computation of retirement benefits. *Id.* at 678. Because it was admitted that the higher salaries paid to school employees while on union leave were not based upon, and were in fact higher than, those available under the standard salary schedule for school employees generally, they were properly excluded as not constituting "compensation" for purposes of calculating pension benefits. *Id.*

The language of the Retirement Code,[10] however, including in particular its sharply differing definition of "compensation," demonstrates that the General Assembly manifestly intended the opposite result to obtain for police officers and firefighters than for school employees. Unlike the restrictive and limiting definition of language in PSERC, in the Retirement Code, "compensation" is defined as all "remuneration **actually** received," excluding certain expenses not at issue here. 71 Pa.C.S. § 5102 (emphasis added). Accordingly, unlike in *Kirsch* where, pursuant to PSERC any remuneration in excess of that available under the standard salary schedule does not constitute "compensation," under the Retirement Code, **all** remuneration actually received (other than an excluded reimbursement) does constitute "compensation" and thus is included in the calculation of pension benefits. Under the Retirement Code, unlike under PSERC, union differentials actually received is "compensation" for purposes of pension benefit computations.

In this regard, we agree with the Commonwealth Court's observation that under both the Retirement Code and PSERC, employees on union leave are only entitled to pension benefits "as if [they] were on full-time active service." *PSP v. SERB*, 131 A.3d at 144. Under both statutory schemes, pension benefits are calculated based upon years of service and "final average salary." 71 Pa.C.S. § 5702; 24 Pa.C.S. § 8342. "Final average salary" is in turn based on the "highest average **compensation** received as a member" during defined periods of service. 71 Pa.C.S. § 5102; 24 Pa.C.S. § 8102 (emphasis added"). Consequently, given PSERC's definition of "compensation," school

---

[10] Because the language of the relevant provisions of the Retirement Code are unambiguous, we may not consider the arguments based upon legislative history proffered by Appellants. 1 Pa.C.S. § 1921(c).

employees are not entitled to have any portion of their remuneration in excess of that based upon the standard salary schedule be included in the calculation of "final average salary" – **whether or not on union leave**.  Conversely, under the Retirement Code, police officers and firefighters, **whether or not on union leave**, are entitled to have all "remuneration actually received" included in "compensation" when computing their "final average salary."  Both the Retirement Code and PSERC permit union leave without any loss of pension benefits, and both require that employees on leave continue to be compensated "as if [they] were on full-time active service."  Because of the differing definitions of "compensation," however, the levels of compensation received while on union leave are treated differently for purposes of computing pension benefits.  Union differentials merely highlight the pointed distinction between the calculation of pension benefits under the Retirement Code and PSERC.

For these reasons, we conclude that a police officer or firefighter may take leave to serve as a full time officer of his or her union, and all remuneration actually received while on leave is includible when calculating retirement benefits.  The Commonwealth Court did not err in ruling that the union differentials received by Claimants in this case were properly included in their retirement benefit computations.

## B.  Violation of Retirement Code

Appellants next contend that the December Award, which set the salary levels for union officers on leave (including Claimants) at specified levels during the term of said leave violates section 5955 of the Retirement Code.[11]  Section 5955 provides that

---

[11] Section 5955 states:

(continued…)

pension rights of state employees are determined by the Retirement Code and that no collective bargaining agreement or arbitration award may change the provisions of the Retirement Code, require the Board to administer any other pension or retirement benefits, or require any action by any other government body with respect to pension or retirement benefits. 71 Pa.C.S. § 5955. According to Appellants, the December Award created union differentials for Claimants, and thus their increased retirement benefits are the impermissible result of implementation of the December Award.

As indicated hereinabove, pursuant to the Statutory Construction Act, when construing legislative intent, courts may apply certain presumptions, including that General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S. § 1922(1). Based upon application of this presumption, we cannot agree with Appellants' proposed interpretation of section 5955. In particular, it would be both absurd and unreasonable to interpret section 5955 in a manner that would preclude collective bargaining agreements or arbitration awards from including any negotiated salary increases. Under Appellants' proposed interpretation, collective bargaining agreements or arbitration awards could never include negotiated salary

---

(…continued)

> Regardless of any other provision of law, pension rights of State employees shall be determined solely by this part or any amendment thereto, and no collective bargaining agreement nor any arbitration award between the Commonwealth and its employees or their collective bargaining representatives shall be construed to change any of the provisions herein, to require the board to administer pension or retirement benefits not set forth in this part, or otherwise require action by any other government body pertaining to pension or retirement benefits or rights of State employees.

71 Pa.C.S. § 5955.

increases, as such increases would, based upon the above-discussed methods of computation, typically result in increased retirement benefits.

Instead, we agree with the Commonwealth Court that section 5955 of the Retirement Code does not restrict bargaining over pension benefits, and only prohibits collective bargaining agreements or arbitration awards from granting pension benefits not authorized or supported by the Retirement Code. *Kirsch*, 131 A.3d at 144; *see Pa. State Troopers Ass'n v. State Emp' Ret. Bd.*, 677 A.2d 1329 (Pa. Commw. 1996) ("[A]s long as an arbitration award does not grant rights that are unsupported by the Retirement Code, then the award is not unlawful."), *appeal denied*, 689 A.2d 237 (Pa. 1997); *Weaver,* 129 A.3d at 591. As the Commonwealth Court also correctly observed, this Court upheld the December Award in *PSTA II* under the Retirement Code even though it provided for union differentials for those employees on union leave. PSP, 131 A.3d at 144 (citing *PSTA II*, 23 A.3d at 977).

The order of the Commonwealth Court is affirmed.

Justices Baer, Todd, Dougherty, Wecht and Mundy join the opinion.

Chief Justice Saylor did not participate in the consideration or decision of this case.